## UNITED STATES v. ÆTNA LIFE INS. CO. OF HARTFORD, CONN., et al.

### No. 74.

District Court, D. Connecticut.

Jan. 8, 1942.

Samuel O. Clark, Jr., Asst. Atty. Gen., Andrew D. Sharpe and F. A. Michels, Sp. Assts. to the Atty. Gen., and Robert P. Butler, U. S. Atty., and Valentine J. Sacco, Asst. U. S. Atty., both of Hartford, Conn., for plaintiff.

Day, Berry & Howard, by Cyril Coleman, all of Hartford, Conn., for defendant.

HINCKS, District Judge.

1. The taxpayer, one Frank P. Nistle of Pennsylvania, on or about March 4, 1920, entered into a policy of life insurance having substantial endowment features with the defendant, the Aetna Life Insurance Company of Hartford, Connecticut. Under the terms of the policy, power was reserved to the taxpayer to elect to receive in lieu of the specified endowment benefits the stated cash value of the policy; also to change the beneficiary designated to receive the death benefit upon his written request "accompanied with the policy for proper endorsement." Ever since April 5, 1935, taxpayer's wife had been duly named as death beneficiary under the policy if living at the date of his death; otherwise his daughter.

2. Prior to April 1, 1937, the Commissioner of Internal Revenue had made additional income-tax assessments against the taxpayer for the years 1926 and 1932 aggregating upwards of $10,000, and no part of said assessments has been paid.

3. On April 1, 1937, the Government notified the defendant, the Aetna Life Insurance Company, that there was owing from the taxpayer to the Government an internal revenue tax amounting to $8,187.-72, and that all property and rights to property then in its possession belonging to the taxpayer were "thereby seized and levied upon for the payment of said taxes and interest", and made demand upon the Company for the payment of said tax, and demand was made for the payment of said sum or for such lesser sum as the Company was indebted to the taxpayer. The demand was reiterated on December 9, 1937. These demands were refused by the Company although on April 1, 1937, the policy had a net cash value of $3,605.22.

4. Thereafter on December 28, 1938, the Government brought this action under Section 3710 of the Internal Revenue Code. Said action, as also the earlier demand and purported levy upon the defendant, were seasonably made.

5. The taxpayer, Frank P. Nistle, alleged by the Government to be a resident of Pennsylvania, was named as a co-defendant and served not otherwise than by registered mail and publication pursuant to order of court purportedly under 28 U.S.C.A. § 118. No appearance has been entered in behalf of the said Nistle.

Opinion.

As the case stands, the only defendant within the jurisdiction of the court is the Insurance Company. The mere naming of the insured, the taxpayer, as a defendant and the purported service upon him by registered mail and publication were wholly nugatory. As the complaint expressly states, the action is brought under Section 3710, Int.Rev.Code, 26 U.S.C.A. Int.Rev.Code, § 3710, and as such is one to enforce a penalty against the defendant Insurance Company. Section 57 of the Judicial Code, 28 U.S.C.A. § 118, goes no further than to authorize substituted service on nonresident defendants in actions brought to enforce liens upon, or to assert claims to, "real or personal property within the district where such suit is brought."

The central issue of the case is whether or not the taxpayer, the insured, has property or a right of property which at the time of the Government's demand was in the possession of the Insurance Company. And this issue depends at least in part upon the question whether the defendant's wife as beneficiary under the policy has a property interest therein. And so it is that the court is asked to make an adjudication herein, ascertaining the rights of the taxpayer and his wife, although they are not parties subject to the jurisdiction of the court. As a result an adjudication against the Insurance Company herein based upon a finding that at the critical date it was in possession of property rights of the insured, although enforceable against the Insurance Company, will not be available to it as a bar to any action which the insured or the beneficiary may later bring against it in some other court which might quite possibly upon another record reach a decision upon the fundamental issues in conflict with that embodied in an adjudication here.

In my view such a possibility does not absolutely preclude the maintenance of an action such as this against the insurance company alone; the Venue Act occasionally makes it impossible for a federal court—even in a case in which jurisdiction over the subject-matter is confined to a federal court—to have all the parties necessary for a final determination of the entire controversy before it. In such cases

there is no alternative but to let the controversy develop step by step even though a party, as the Insurance Company here, is thereby subjected to the hazard of paying twice. Nevertheless, there is manifest throughout the Federal Rules of Civil Procedure a prevailing policy that an entire controversy shall be dealt with in a single action, thus reducing to a minimum the hazard of double recoveries and a circuity and multiplicity of actions. And Rule 19 of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, attempts to give some definition to the distinction between indispensable parties and necessary parties.

 Under Rule 19, I think the taxpayer-insured and his beneficiary may not properly be classified as indispensable parties; such a classification indeed might possibly completely frustrate the Government's remedy under the Act. I hold, however, that in this case the relationships of the taxpayer and his beneficiary to the subject-matter of controversy are such that they "ought to be parties if complete relief is to be accorded between those already parties", within the meaning of Rule 19(b). For surely the position of the Insurance Company is one of such hazard that it can have complete relief only if they are joined. Under this rule, to be sure, "the court in its discretion may proceed in the action without making such persons parties." And doubtless, it would constitute an abuse of discretion if the court should refuse to proceed in a case in which the Government was powerless under the limitations of the Venue Act to bring all the necessary parties into the jurisdiction of any federal court. But this is not such a case. For Rule 19(c) provides as follows:

"In any pleading in which relief is asked, the pleader shall set forth the names, if known to him, of persons who ought to be parties if complete relief is to be accorded between those already parties, but who are not joined, and shall state why they are omitted."

With this requirement the Government has not complied. For aught that appears it would have been entirely feasible for the Government to bring all the parties before a federal court in Pennsylvania having jurisdiction over the insured and his beneficiary as well as the Insurance Company. Consequently, in my view, the case is a proper one for dismissal for a lack of necessary parties under the discretion recognized in Rule 19(b). However, since the parties have united in submitting on the merits, I proceed on that basis.

 I incline to the view that the taxpayer's rights as the insured under the policy here involved constitute "property" within the meaning of Section 3670 of the Internal Revenue Code, 26 U.S.C.A. Int. Rev.Code, § 3670, which imposes a sweeping lien for unpaid taxes upon "all property and rights to property" of the taxpayer. To be sure, the taxpayer's rights as the insured under the policy are only the rights of an obligee under an executory and conditional contract and in certain aspects are intertwined with somewhat analogous rights in the third-party beneficiary. A conditional right so intangible and complex we do not generally view as "property"; nor indeed as a mere chose in action. Nevertheless I assume, at least for all present purposes, that it is a form of "property" within the sweeping language of Section 3670.

But we must bear in mind that the rights and privileges of the insured are not commensurate with the correlative duties and obligations of the defendant insurer. This is so because the contract creates a whole bundle of enforceable rights which are scattered amongst the insured, the insurer, the beneficiary, and assignees, if any; and the duties and obligations of the insurer, which perhaps in a sense may be viewed as commensurate with the aggregate of all the outstanding rights and privileges in others, not only are subject to many conditions—some within the control of the insured and others not—but also flow to others than the insured.

 In such a situation, the cash value of the policy in dollars is no true measure of the value of the power of the insured to demand the cash surrender value of his policy and his right thereafter, upon a physical surrender of the policy, to receive the cash value thereof. As was observed in United States v. Massachusetts Mutual Life Ins. Co., D.C., 38 F.Supp. 333, the actual value of the policy may exceed its cash surrender value. With equal truth it may be said that the right of the insured therein may be less than the cash surrender value. For even if we could assume that the stated cash value of the policy measures the obligation of the insurer, as observed above this obligation flows to the beneficiary as well as the insured.

For instance, the beneficiary may have paid the premiums under the policy and hence have an equitable interest therein which if, timely asserted, would nullify the right of the insured either to receive the entire cash value or to assign. Neary v. Metropolitan Life Ins. Co., 92 Conn. 488, 103 A. 661, L.R.A.1918F, 306. And possession of the policy by one other than the insured—certainly a lawful possession thereof—will restrict the right of the insured to receive the cash value or to assign. Indeed, under the law of Connecticut, quite apart from any equitable interest, the beneficiary has what the court has called a right which is "vested, although qualified in that it is subject to be defeated by an exercise of the right reserved" to the insured to change the beneficiary Allen v. Home National Bank, 120 Conn. 306, 311, 180 A. 498. And if it be urged that in this case the rights must be determined under the law of Pennsylvania, the result is substantially the same. United States v. Penn Mutual Life Ins. Co., D.C.E.D.Pa., 44 F.Supp. 804, Kirkpatrick, J.

Indeed, for aught that appears the insured may at some time prior to the Government's demand have made an irrevocable gift of all or part of his interest in the policy to the beneficiary, his wife, the result being that the part or all of the equitable and conditional interest in the cash surrender value now belongs to her. There is nothing in the proofs here—and nothing in the complaint except an unsupported allegation made "upon information and belief"—to negative her equitable interest, nor her legal conditional interest, in the policy. Perhaps if the Government had brought this action in Pennsylvania where the insured and the beneficiary might have been joined as defendants, it would have been relieved of the duty to negative the existence of an outstanding equitable interest in the policy. But the possibility that such an interest may be outstanding illustrates the danger of injustice which may result if the action is allowed to go forward here in the absence of necessary parties without whom all the rights involved in the entire controversy cannot finally be determined.

▋ All things considered, on this phase of the case I agree with Judge Clancy in United States v. Metropolitan Life Ins. Co., D.C., 41 F.Supp. 91, that the value of the beneficiary's interest de-pends in part upon the personal exercise by the insured (rather than by his creditors including the United States) of powers reserved to *him* under the policy, and that likewise the value of the insured's interest must be affected by the same condition. And I hold here, as Judge Sweeney held in United States v. Massachusetts Mutual Life, D.C., 38 F.Supp. 333, that the Government has failed to prove that the taxpayer's interest in the policy has a value which equals or exceeds its stated cash value. Whether by actuarial or opinion evidence, or otherwise, the actual value of the taxpayer's interest is susceptible of proof, it is not now necessary to determine. Cf. Cannon v. Nicholas, 10 Cir., 80 F.2d 934, 939. But proof of such value is an essential element of the Government's case under Section 3710 of the Code, and for lack of such proof the case falls.

▋ But on other grounds also I hold the Government's case does not fall within Section 3710. For this section, as was observed in the opinion in In re Rosenberg's Will, 269 N.Y. 247, 199 N.E. 206, is not in pari materia with the lien statute, Section 3670. For Section 3710 is confined to cases involving only taxpayer's property which is *"subject to distraint"*.

▋ Under the common law, the process of distraint was a summary, non-judicial, remedy which was confined to the right to seize chattels and hold them in pledge for the underlying obligation of the owner; the process included no power of sale. 1 Bouv.Law Dict., Rawle's Third Revision, 1914 Ed., pg. 892; Pollock & Maitland, History of English Law, Vol. 2, pg. 576. By the first Excise Tax Law which Congress enacted, 1 Stat. 204, the remedy, though still confined to "goods", was made available to the United States for the collection of taxes and extended to include a power of sale. By the Revenue Act of 1866, 14 Stat. 107, the remedy with a concomitant power of sale as an instrument for the collection of taxes *was continued* as to "goods, chattels, or effects" (which I think involved no enlargement of the remedy) and *was indeed enlarged* to include "stocks, securities, and evidences of debt." The enlargement, it will be observed, related only to species of personal property, the existence of which in each case was characterized by documentary evidence. "Bank accounts" were included within the scope of the remedy by the Rev-

enue Act of 1924, § 1016, 26 U.S.C.A. Int.Rev.Acts, page 129. One would surmise that this last enlargement was made because Congress recognized that in the phrase of the earlier acts "evidences of debt" covered only such debts as indeed had documentary evidence which was susceptible of seizure, like notes, and did not cover a debt such as a bank account which often lacked specific documentary evidence. But the mere fact that Congress has expanded the remedy to include a few specified forms of personal property which lack corporeal existence and to include real estate (Int.Rev.Code, § 3700, 26 U.S.C.A. Int.Rev.Code § 3700) scarcely warrants the inference that Congress intended that all forms of incorporeal property not susceptible of physical seizure should be subject to distraint. Cf. British Mutoscope Co. v. Homer, [1901] 1 Ch. 671.

■■■ Thus the historical approach leads to the conclusion that *personal* property subject to distraint under the authority of what is now Section 3690 of the Internal Revenue Code, 26 U.S.C.A. Int.Rev.Code, § 3690, is limited to corporeal property except as otherwise provided in that same section.

This construction is confirmed by internal evidence from within the Internal Revenue Code. Section 3670 uses broad language: it subjects to lien "all property and rights to property, whether real or personal, belonging to" the taxpayer. If we construe this sweeping language to include incorporeal personal property, the more limited language of Section 3690 strongly suggests a conscious intent to include within the remedy of distraint only corporeal property except as otherwise specified therein.

■■■ Moreover Section 3692, 26 U.S.C.A. Int.Rev.Code, § 3692, is the only provision of the Code governing a levy on personal property. And the levy (on personal property) authorized is limited to cases "of neglect or refusal *under section 3690*". Thus this section recognizes that the (comparatively) narrow class of personal property subject to distraint under Section 3690 may also be subject to lien under Section 3670. But Section 3692 does not broadly subject "*all* property", which under 3670 is subject to lien, also to levy. Indeed, although chattels and the simple choses in action specified in Section 3690 are left to the rough and ready process

of executive distraint, it seems altogether plausible that Congress intended that the enforcement of liens upon complex and intangible rights, such as those of the obligee under an executory, conditional contract, should be accomplished only through the judicial process provided in Section 3678, 26 U.S.C.A. Int.Rev.Code, § 3678.

Moreover Section 3693, 26 U.S.C.A. Int. Rev.Code, § 3693, sketches in considerable detail the "Proceedings on distraint". But this section is expressly limited to cases of distraint made *"as provided in section 3690."* Surely, if it had been intended that every kind of property subject to lien under the broad language of Section 3670 were also subject to distraint, the rules for proceedings on distraint would not have been expressly limited to cases arising under the narrower language of Section 3690. For if detailed rules of procedure were necessary to govern the distraint and sale of tangibles, they were even more necessary in dealing with such impalpable and complex quantities as incorporeal rights. And it will be noticed that the substance of the rules in Section 3693, though well adapted to deal with tangibles, (chattels, or documentary evidence of choses in action) having a definite physical situs, are scarcely appropriate for transactions in incorporeal rights. Indeed, it is perhaps significant that nothing in the Code teaches how a "levy" may be made on property not susceptible of physical seizure.

Blacklock v. United States, 208 U.S. 75, 28 S.Ct. 228, 52 L.Ed. 396, is not inconsistent with these views. There it was held only that nothing in the Act of 1868, 15 Stat. 167, which afforded judicial process for the enforcement of a tax lien on real estate, superseded the right of distraint thereon expressly provided in the Act of 1866, 14 Stat. 108, Section 30 of the Act of 1864, as amended. To be sure, the court quotes a fragment of the Act of 1866, 14 Stat. at page 107, Section 28 of the Act of 1864, as amended, which appears to authorize a *levy* on *all* the property of a delinquent taxpayer. But even so, the only *sale* authorized under this section is that of the taxpayer's "goods, chattels, or effects, including stocks, securities, and evidences of debt." I doubt whether every kind of incorporeal right could lawfully be sold on distraint under this provision: certainly the Blacklock case does not so hold. And in any event, in respect of per-

sonal property the broad power of *levy* (whatever that may mean) under the Act of 1866 is now limited, as we have seen, by Section 3692 of the Code to cases falling within the authority of Section 3690.

And also Section 3710 of the Code under which this very action has been brought contains additional features which not only tend to confirm my construction of the phrase "property, subject to distraint", but also constitute essential elements of the Government's case which have not been satisfied by the proofs. It is concerned only with that property of the taxpayer which is in the "possession" of another. The concept of possession is ill adapted to the right either of obligor or of obligee under an executory conditional contract. But even if by some fiction, and without statutory aid in defining the fiction, the right can be said to be in the "possession" of any one, under the proofs here the only reasonable inference is that the right has been throughout in the possession of the obligee, the taxpayer. And if, wholly without warrant in law, we should treat the right of the insured as merged in the policy itself, which is only a fragment of the evidence necessary to prove his right, the case falls for lack of proof that the policy is in the possession of the defendant insurer.

Moreover, under Section 3710, a levy is a prerequisite to the action. I have already observed upon the ineptness of a "levy" in connection with rights such as are here involved. And what proof is there of a "levy"? We have the admitted allegations of the complaint reciting a notice on April 1, 1937, to the defendant that all the taxpayer's rights in the defendant's possession were "thereby seized and levied upon." But I can find no statute which says that a mere notice shall constitute a "levy". Under Section 3672, 26 U.S.C.A. Int.Rev.Code, § 3672, it was provided that a lien for taxes should become effective as against a mortgagee, etc., upon filing a specified "notice". One would expect that if Congress for purposes of Section 3710 had intended that a bare notice served on the defendant "in possession" should be sufficient, it would have required a notice rather than a "levy". The complaint also alleges a demand on December 9, 1937, that the defendant surrender "the deposits, mon-

ey, credits, property, and rights of property" belonging to the taxpayer in the defendant's possession on April 1, 1937. But there was no proof of any such deposits, moneys or credits. And even if it could be held that the defendant then had possession of some property right of the taxpayer, by what authority can a mere demand for its surrender be deemed the equivalent of a levy? In this connection it may be noted that earlier statutes had drawn a distinction between a "demand" and a "levy". Indeed, the very statute quoted in the Blacklock case, 208 U.S. 82, 28 S.Ct. 231, 52 L.Ed. 396, 14 Stat. at page 107, provided that "the collector, *after demand, may levy*".

Again, Section 3710 contemplates a "surrender" by the defendant. But how could the defendant "surrender" the right of the taxpayer as obligee under the policy even if through some fiction it were deemed to have "possession" of that right? It had possession neither of physical property of the taxpayer nor of muniments of title evidencing his incorporeal right. A manual surrender was impossible. And the defendant was wholly without authority to make a written "surrender" of another's rights.

### Conclusions of Law.

I come, therefore, to the following conclusions on the merits.

1. The only property right of the taxpayer-insured involved in the case was his intangible right as obligee of the executory, conditional contract embodied in the policy of life insurance in evidence.

2. That the value of this right as of April 1, 1937 (or as of any other date) was not proved.

3. That said right of the taxpayer was not a property right subject to distraint, within the meaning of Section 3710.

4. That neither the notice of April 1, 1937, nor the demand of December 9, 1937, constituted a levy upon said right, within the meaning of said statute.

5. That said right was never in the possession of the defendant within the meaning of said statute.

6. The defendant is entitled to judgment.

Let the Clerk enter judgment accordingly.