## UNITED STATES v. METROPOLITAN LIFE INS. CO. et al.
### No. 297.

Circuit Court of Appeals, Second Circuit.
July 15, 1942.

150

Jerome H. Doran, Asst. U. S. Atty., and Mathias F. Correa, U. S. Atty., both of New York City, for appellant.

Frederick H. Nash, of Boston, Mass., and William B. Moore, of New York City (Tanner, Sillcocks & Friend, of New York City, of counsel), for appellee.

Before L. HAND, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

L. HAND, Circuit Judge.

The plaintiff appeals from a summary judgment dismissing its complaint upon the following state of facts. The defendant, Nistle, became indebted to the plaintiff for deficiencies in income taxes assessed against him for the years 1926 and 1932. Part of these he paid but there remained due more than $5,000, none of which the plaintiff has been able to collect. Nistle had taken out two life insurance policies in the defendant company, one of which—for $1,000—was payable to "the legal representatives of the insured," and gave the insured the option of taking the cash surrender value upon surrender of the policy. The second policy was for $30,000 and the original beneficiary was "L. Mable" (sic) "Nistle, wife"; it was taken out in 1923 and in May, 1935 the beneficiary was changed so that the wife became entitled to receive one-third of the proceeds and a daughter two-thirds. This policy also gave the insured the option of taking the cash surrender value upon surrender of the policy. In both policies the insured reserved the power to change the beneficiaries. On November 25, 1936 the plaintiff served notice on the insurance company in Pennsylvania that Nistle owed $8,187.72 in taxes, and that it thereby levied upon all his property then in its possession and all sums of money owed by it to him; and it repeated this demand on December 4, 1937. This action was commenced on May 20, 1940, by the personal service of a summons and complaint upon the insurance company; and upon Nistle on May 31, 1940 in Pennsylvania (the last having been authorized by an order of the District Court for the Southern District of New York). The policies are not in the possession of the insurance company, and the plaintiff has of course not offered to surrender them. The plaintiff asserts that its notices to the insurance company constituted a valid levy under § 3692, 26 U.S. C.A. Int.Rev.Code, and that the company's refusal to pay was a refusal to "surrender" Nistle's "property" in its "possession," which made it liable for the cash surrender value under § 3710(b).

The distress authorized by § 3690 is different from anything known to the common-law, both because it authorizes a sale of the property seized, and because it extends to other personalty than chattels. The first of these modifications appeared as early as 1791 in § 23 of Chapter XV of the laws of that year, 1 St.L. p. 204, which provided for the "distress and sale of goods of the person or persons refusing or neglecting to pay" certain excises imposed by that act. This was repeated in § 28 of the Revenue Act of 1864, 13 St.L. p. 233, the phrase there being: "it shall be lawful for such collector * * * to collect the said duties or taxes * * * by distraint and sale of the goods, chattels, or effects of the persons delinquent as aforesaid." The procedure then prescribed was in substance like the present, except that nothing was said about a levy. In 1866, 14 Stat. 107, § 9, Congress made the second modification by including in the leviable property "stocks, securities, and evidences of debt"; and a levy was required to be made "upon all property and rights to property * * * belonging to" the taxpayer. The provision for a levy became § 3188 of the Revised Statutes without change and remains unchanged at the present time (§ 3692). In 1924, § 1016 of the Revenue Act of 1924, 43 St.L. 343, the words "bank accounts," were interpolated between "securities" and "evidences of debt," and that too has remained unchanged (§ 3690). Section 3710 was not passed until 1926 when it was added in its present form. § 1114(e) and (f) of the Revenue Act of 1926, 44 St.L. 117.

Thus it appears that between 1866 and 1926 if the taxpayer's chattels

were in the possession of a third person who refused to surrender them, the collector had no means of enforcing a surrender and could not make delivery in performance of his contract of sale. This put the Treasury at a disadvantage in such cases, because all that the collector could do was to sell the taxpayer's bare title, which was likely to fetch a much lower price than the chattels if delivered. Section 3710 was apparently passed to remedy this; it imposed a direct duty upon the recalcitrant holder to surrender them, and authorized an action against him for their value if he refused. It is true that this action was called a "penalty," but it was really not that, for title would undoubtedly pass upon payment, so that the holder would suffer no loss. But the action would at once determine the validity of the taxpayer's title and dispense with the need of any sale by liquidating the value of the chattels. It seems very probable that the words "rights to property," introduced in 1866 at the same time that choses in action were first made leviable, were meant to cover them as distinguished from chattels described as "property"; at least it is hard to understand what else could have been intended. Certainly the same phrase when used in § 3710(a) means what it does in § 3692, especially since it has a function, when understood to refer to choses in action. That function is to cover cases in which third persons, such as trustees or the like, are in possession of documents— notes, bonds, etc.—which belong to the taxpayer; perhaps it also covers cases in which the chose in action is not embodied in any document, even though that strains the meaning of the word "possession" a little. The collector is entitled to a "surrender"—which will include an assignment when that is necessary—in order to realize the full value of the chose in action upon a sale. The remedy runs pari passu with that given in the case of chattels.

▆▆▆ That is not enough, however, for the plaintiff's position here; Nistle has the policies and he is the holder of the obligation, i. e. the right to demand their cash surrender value. To succeed, the plaintiff must maintain that the insurer— the promisor—is in "possession" either of Nistle's "property," or of his "right to property." The second can be at once eliminated—indeed the plaintiff does not urge it— obviously it would be nonsense to say that a promisor is in "possession" of a "right to property" against himself, or that by performing he "surrenders" that right. But the plaintiff does argue that the promisor has "possession" of the promisee's "property" and that by performance—payment—he "surrenders" it. Obviously that is legally a solecism; the promisee has no interest in a penny of the promisor's property; the promisor may even perform through a third person, whom he induces to advance the money to the promisee on the promisor's credit. The promisee can do nothing but compel performance, and performance is not fastened upon any part of the promisor's property. However, such an argument is not final; people use language loosely—even in statutes—and it would not be too great a strain on the word "property" to make it serve for the promisor's performance if the setting required. The setting not only does not do so, but it strongly tends the other way. In the first place, as we have seen, it is probable that the words "rights to property" in § 3692 were used to describe choses in action in contrast with "property" which stood for chattels, and it is certain that whatever meaning they have in § 3692, they have in § 3710(a). More significantly, so to construe them would introduce an inharmonious exception into the whole scheme of the statute. If the United States can sue a taxpayer's debtor whenever he refuses to pay the collector, § 3710(a) changed the proceeding pro tanto from a sale under a distress to a garnishment; the United States was substituted for the taxpayer as promisee. Even that would not be conclusive, if the intent were plain, or if the interpretation were necessary to give any effect to the change. It is not; on the contrary in what is probably its chief application, i. e. to chattels, § 3710(a) accords with a distress and is ancillary to it; as we have seen, it serves to reduce the taxpayer's goods to the collector's possession so that he can make delivery. And also, in so far as it expressly touches choses in action at all (assuming that "rights to property" does touch them), it can have no other function. True, a disputed chose in action will not bring as good a price as an undisputed one; but neither will a chattel delivered at a sale if the title is doubtful. Yet certainly the section gives no evidence of any purpose to allow the United States to mend in the district court all infirmities of title in the taxpayer's property. The diction, the setting and the purpose of the section

unite to deny the plaintiff's interpretation of the word "property."

The cases on which the plaintiff relies do not stand in the way of this conclusion. In Cannon v. Nicholas, 10 Cir., 80 F.2d 934, and Kyle v. McGuirk, 3 Cir., 82 F.2d 212, the taxpayer moved to dissolve the warrant of distraint and the court considered the merits of the claim. Possibly it need not have done so on the ground that the collector was entitled to sell out whatever rights the taxpayer had; but certainly it was permissible to consider whether any rights whatever would pass upon the sale, and the point before us was not raised. In United States v. Long Island Drug Company, 2 Cir., 115 F.2d 983, the only question which we considered was whether the levy could reach future earnings; again the point was apparently not raised. The same was true in Commonwealth Bank v. United States, 6 Cir., 115 F.2d 327. On the other hand the First Circuit, though by a course of reasoning different from ours, held that in the same situation the insurer was not in "possession" of any property belonging to the taxpayer. United States v. Massachusetts Mut. Life Ins. Co., 1 Cir., 127 F.2d 880. Judge Hincks held the same in United States v. Aetna Life Insurance Co., D.C., January, 1942, 46 F.Supp. 30. The other decisions cited did not discuss the question.

Judgment affirmed.