In the Matter of **SPORT COAL COMPANY, Inc., a corporation,**
**Bankrupt.**
**No. 6691.**

United States District Court,
S. D. West Virginia,
Charleston Division.

Oct. 18, 1954.

518

William T. Lively, Jr., Asst. U. S. Atty., Charleston, W. Va., for petitioner.

Claude A. Joyce, Logan, W. Va., for trustee in bankruptcy.

MOORE, Chief Judge.

Sport Coal Company, whose principal place of business was in Logan County, West Virginia, was adjudicated a bankrupt on June 29, 1953. Notices of federal tax liens against the bankrupt were filed with the Clerk of the County Court of Raleigh County, West Virginia, on August 19, 1952, and with the Clerk of the County Court of Boone County, West Virginia, on October 6, 1952. No notices of such liens were ever filed in Logan County.

On June 26, 1953, the District Director of Internal Revenue levied a distress on the Boone County Coal Corporation, a debtor of the taxpayer-bankrupt, to seize any property held by it which belonged to the bankrupt. On March 11, 1954, the referee ordered Boone County Coal Corporation to turn over to the Trustee the money owed by it to the bankrupt.

The United States has brought the case before the Court by petition for review to have the referee's order of March 11, 1954, set aside.

The referee found and certified that, as a matter of law, "1. The claims of the United States of America should not prevail as against the trustee in bankruptcy because no lien was filed in the office of the Clerk of the County Court of Logan County, West Virginia * * *" and that "2. Even if the trustee in Bankruptcy was not a judgment creditor, the claim of the United States of America should be postponed in payment to expenses of administration and wage claims." The United States questions the validity of these conclusions. Such is the issue.

Section 3672 of the Internal Revenue Code, 26 U.S.C.A. § 3672, provides, with reference to tax liens, as follows:

"(a) Invalidity of lien without notice. Such lien shall not be valid as against any mortgagee, pledgee, purchaser, or judgment creditor until notice thereof has been filed by the collector—

"(1) Under State or Territorial laws. In the office in which the filing of such

notice is authorized by the law of the State or Territory in which the property subject to the lien is situated, whenever the State or Territory has by law authorized the filing of such notice in an office within the State or Territory".

W.Va. Code 1949, Chap. 38, Art. 10, § 1, declares that "No such (federal tax shall be a valid lien as against any mortgagee, purchaser or judgment creditor, until such notice shall be filed in the office of the clerk of the county court of the county or counties in which the property subject to such lien is situated."

Since the principal place of business of the bankrupt was in Logan County, it follows from these two statutes that the United States must record its tax liens in Logan County if those liens were to be valid as against a mortgagee, pledgee, purchaser, or judgment creditor. The vital question is: does the trustee in bankruptcy have the status of a judgment creditor within the meaning of the quoted statutes?

The rights and powers of a trustee in bankruptcy are defined in § 70, sub. c of the Bankruptcy Act, 11 U.S.C.A. § 110, sub. c. The pertinent provisions of that section are that "The trustee, as to all property, * * * upon which a creditor of the bankrupt could have obtained a lien by legal or equitable proceedings at the date of bankruptcy, shall be deemed vested as of such date with all the rights, remedies, and powers of a creditor then holding a lien thereon by such proceedings, * * *."

It must be borne in mind that this inquiry concerns a chose in action owned by a bankrupt West Virginia corporation. Whether a creditor could have obtained a lien on this chose in action, and the nature of the proceedings required to effect such a lien, depend upon West Virginia law. In re Lustron Corp., 7 Cir., 184 F.2d 789; Janney v. Bell, 4 Cir., 111 F.2d 103.

It is settled beyond question in West Virginia that a chose in action owned by a corporation is lienable. Chap. 38, Art. 4, § 1 and § 8, W.Va. Code,

Michie 1949; 8 Michie's Jurisprudence, Executions, § 12 and § 32. To effect such a lien, it is necessary, in the absence of contractual arrangements, that the creditor obtain a judgment, cause a writ of execution to be issued thereon and delivered to the executing officer. Chap. 38, Art. 4, § 5 and § 8, W.Va. Code, Michie 1949; 8 Michie's Jurisprudence, Executions, § 31.

Thus, in West Virginia, before a creditor "could have obtained a lien by legal or equitable proceedings" on a chose in action, he first must have recovered a judgment. Section 70, sub. c continues to the effect that the trustee shall have the rights of "a creditor then holding a lien thereon by *such proceedings*". (Emphasis supplied.) I am of opinion that the phrase "such proceedings" means whatever proceedings are necessary to enable the creditor to effect a lien on the particular property involved. Since that is so, the trustee here, by virtue of § 70, sub. c, is vested with all the rights of a judgment creditor who has caused execution to be issued and delivered to the proper officer. For cases which concur in result, although perhaps not in reasoning, see McKay v. Trusco Finance Co. of Montgomery, Alabama, 5 Cir., 198 F.2d 431; Sampsell v. Straub, 9 Cir., 194 F.2d 228; In re Sayre Village Manor, Inc., D.C., 120 F. Supp. 215.

Another matter of significance, although not alluded to in the record before me, concerns the consequences of the distraint, which is said in the Government's brief to have been made on September 23, 1952, by the District Director of Internal Revenue on the property of the bankrupt, and the subsequent levy, which is disclosed by the record, directed to the Boone County Coal Corporation. Did such distraint and levy give the United States any rights as to the chose in action which it did not lose by reason of its failure to record its tax liens?

Whether this question will be resolved affirmatively or negatively depends primarily on the scope of the remedy of distraint. Authority to dis-

train is found in § 3690 of the Internal Revenue Code, 26 U.S.C.A. § 3690, which provides as follows:

"If any person liable to pay any taxes neglects or refuses to pay the same * * *, it shall be lawful for the collector * * * to collect the said taxes, * * * by distraint and sale, * * * of the goods, chattels, or effects, including stocks, securities, bank accounts, and evidences of debt, of the person delinquent as aforesaid."

Section 3690 makes no mention of choses in action as such, but refers only to "bank accounts, and evidences of debt". At common law, the summary remedy of distraint was available with respect to corporeal property only. Section 3690 modified the historical concept of distraint only as it affected "bank accounts," since "evidences of debt," notes, bonds, and other indispensable instruments, are corporeal. For that reason I am of opinion that the chose in action was not subject to distraint. See United States v. Morris & Essex R. Co., 2 Cir., 135 F.2d 711; United States v. Metropolitan Life Ins. Co., 2 Cir., 130 F.2d 149; United States v. Aetna Life Ins. Co. of Hartford, Conn., D.C., 46 F.Supp. 30. Since this is so, the levy against the Boone County Coal Corporation was equally ineffectual. That levy was made under § 3710 of the Internal Revenue Code, 26 U.S.C.A. § 3710, wherein it is provided that "Any person in possession of property, or rights to property, *subject to distraint,* upon which a levy has been made, shall, upon demand by the collector * * * surrender such property or rights to such collector * * *." (Emphasis supplied.)

For the reasons given, it is my conclusion that the referee's order of March 11, 1954, must be sustained.

The foregoing is decisive of the issues herein and thus the question as to the validity of the referee's second conclusion of law need not be considered.

An appropriate order may be submitted.