**UNITED STATES of America, Plaintiff,**

v.

**Milton Alfred GILMORE, a/k/a Dr. Milton Alfred Gilmore, Sara B. Gilmore, individually and as Transferee, Sara Belle Gilmore, Marjorie A. Gilmore, Metropolitan Life Insurance Company, a corporation, and Guardian Life Insurance Company of America, a corporation, Defendants.**

**Civ. A. No. 702-W.**

United States District Court

N. D. West Virginia, Wheeling Division.

Jan. 14, 1957.

Albert M. Morgan, U. S. Atty., Fairmont, W. Va., for plaintiff.

Howard Caplan, Stotler, McReynolds & Caplan, Clarksburg, W. Va., for defendant insurance companies.

BOREMAN, District Judge.

This is a civil action in which the plaintiff seeks to enforce its tax liens

against two parcels of real estate described in the complaint and against the cash surrender value of two insurance policies on the life of defendant, Milton Alfred Gilmore, in partial satisfaction of due and unpaid income taxes and payroll withholding taxes owed by said Gilmore.

On January 12, 1934, defendant, Metropolitan Life Insurance Company, issued its policy No. 8,855,732–A upon the life of defendant, Milton Alfred Gilmore, on the one-year renewable term plan, in the amount of $10,228. This plan was changed in September 1934 to the Whole Life Plan. The policy lapsed for the non-payment of the annual premium due January 12, 1954, but has been continued, in accordance with its terms, as non-participating paid-up term insurance expiring December 12, 1958. The policy is in the possession of the insured and had, at the time of the institution of this action, and still has, a cash surrender value, upon application of the insured for the payment of such value and upon surrender of the policy to the insurer.

On January 13, 1942, defendant, Guardian Life Insurance Company of America, issued its policy No. 768,885, in the face amount of $5,000, upon the life of defendant, Dr. Milton Alfred Gilmore. The policy lapsed for the non-payment of the premiums due on January 13, 1954, and has since been continued, in accordance with its terms, as non-participating paid-up extended term insurance to expire on December 16, 1970. This policy is in the possession of the insured and had, at the time of the institution of this action, and still has, a cash surrender value, upon application of the insured for the payment of such value and upon surrender of the policy to the insurer.

In each of these insurance policies, insured's wife, Sara B. Gilmore, was named as beneficiary, and insured's daughter, Marjorie A. Gilmore, was named as a contingent beneficiary. The right was reserved in each policy to the insured to revoke these beneficiary designations. Each defendant, Metropolitan Life Insurance Company and the Guardian Life Insurance Company of America, is a corporation incorporated under the laws of the State of New York, with its principal place of business in New York City. At the time of the institution of this action, each was, and still is, authorized, under the laws of the State of West Virginia, to issue policies of life insurance in the State of West Virginia.

The defendant, Milton Alfred Gilmore, his wife, Sara B. Gilmore, and his daughter, Marjorie A. Gilmore, formerly resided in Parkersburg, West Virginia. They now reside in London, Ontario, Dominion of Canada. Defendant, Milton Alfred Gilmore, is a fugitive from justice, he having been convicted by a jury in the United States District Court for the Northern District of West Virginia at Fairmont on January 16, 1953, 113 F. Supp. 510, on three counts of an indictment charging him with wilfully and knowingly attempting to evade income taxes for certain calendar years, and having fled beyond the jurisdiction of this court and the jurisdiction of the United States prior to the imposition of sentence upon the verdict of guilty and while a motion for a new trial was pending. Subsequently, the defendant's motion for a new trial was dismissed upon the failure of said Milton Alfred Gilmore to appear as ordered on September 2, 1953, and he has since failed to appear before this Court at Fairmont on any subsequent date to be sentenced on the aforesaid verdict of guilty.

Personal service of process issued in this action and personal service of the complaint filed herein have not been obtained as to any of said individual defendants. An order of publication, however, as to all of said individual defendants, the Gilmores, has been duly executed but they have failed to appear herein and have filed no answer or other responsive pleading to the complaint.

The plaintiff alleges in its complaint that income taxes for the years 1942 through 1948 are due the United States

from the defendant, Milton Alfred Gilmore, and unpaid; that payroll withholding taxes are likewise due from said defendant taxpayer and unpaid; that all lawful procedural actions were taken to perfect plaintiff's liens on all property and rights to property belonging to the defendant, Milton Alfred Gilmore, in Wood County, West Virginia, and in New York; that the defendant, Milton Alfred Gilmore, transferred to his wife, the defendant, Sara B. Gilmore, large amounts of cash, totaling approximately $135,000, from which the defendant, Sara B. Gilmore, purchased property in London, Ontario, Dominion of Canada; that said transfers occurred between November 1949 and August 1950, and that Sara B. Gilmore had no income other than that given to her by her husband; that all lawful procedural actions were taken to perfect plaintiff's liens on property and rights to property of the defendant, Sara B. Gilmore, as such transferee, in Wood County, West Virginia, and in New York; that these liens aggregated more than $50,000; that the Collector of Internal Revenue for the District of West Virginia issued proper notices and demands for payment of the unpaid taxes upon the defendant, Milton Alfred Gilmore, and upon the defendant, Sara B. Gilmore, as transferee, but each defendant has failed and refused to render payment; that notices of federal tax liens filed with the Register of the City of New York were served upon both defendant insurance companies, asserting a lien in favor of the plaintiff upon all right, title and interest of the defendant, Milton Alfred Gilmore, in the two policies of insurance hereinbefore described. These allegations of the complaint are not denied by either of these defendants, Milton Alfred Gilmore or Sara B. Gilmore. For the purposes of this decision, it is unnecessary to recite in detail the actions taken by the plaintiff to perfect the various tax liens.

After being served with process, each defendant insurance company filed its answer herein challenging the right of the plaintiff to reach the cash surrender value of the insurance policies hereinbefore described and asserting reasons as follows: (A) The surrender of each life insurance policy is a condition precedent to the payment of the cash surrender value; (B) the insured himself has no "property or rights to property" in the cash surrender value of his policy, and there is no amount owing from insurer to the insured, according to the terms of the policy itself, in the absence of a demand by insured for such surrender value and the actual surrender of the policy; and (C) in the absence of personal service of process on the individual defendants, this Court has no power to order insured to demand the cash surrender values, to produce the policies, to surrender each policy to the issuer thereof, or to assign the policies so as to transfer any possible interest therein to the plaintiff.

The two defendant insurance companies and the plaintiff executed and filed herein a written stipulation as to certain agreed facts, with exhibits attached, which disclosed the terms of the insurance policies. It appears from the stipulation that neither of said defendant companies has received any application or request from the insured, Milton Alfred Gilmore, for the payment of cash surrender value, accompanied by the surrender of the policy. The terms and provisions of each policy require such application or request from the insured and surrender of the policy itself before the creation of any liability on the part of the insurer to pay the cash surrender value, or before requiring the insurer to do anything, after the lapse for nonpayment of premium due, other than to continue the policy in force for a certain term as non-participating paid-up term insurance.

The principal question for decision is whether or not the plaintiff may reach the cash surrender value of the policies in question, under the circumstances here presented. It is my opinion that it may not do so.

Plaintiff cites several cases to support the proposition that a tax lien of the United States attaches to *all* of the tax-

payer's property, including the cash surrender value of an insurance policy. Under certain limiting circumstances this is true. Here, neither the insured, taxpayer, nor the policies are within the personal jurisdiction of the Court and, consequently, the Court may proceed only *in rem*. Thus, it is obvious that the Court could not, as in the decisions cited by the plaintiff, enter an *in personam* order directing the insured to demand the cash surrender value or to surrender the policies for cancellation. The cited cases indicate only that where the insured is within the personal jurisdiction of the Court, or where he has already presented the policy for cancellation, the government's tax lien does attach to the cash surrender value thereof. But can it so attach where neither of these two circumstances is present?

The answer to that question turns on two other questions. (1) Is the surrender of the policy for cancellation a condition precedent to the insured's right to receive the cash surrender value thereof, or, conversely, a condition precedent to the insurer's obligation to pay it? (2) If so, may the Court, nevertheless, enter a binding *in rem* order or decree declaring that the policies be deemed thereby surrendered and canceled, and order the insurance companies to pay over the cash surrender value thereof to the United States?

■■■ Consider now question (1). The cases are quite clear that compliance with the policy provision requiring the surrender of the policy to the insurer is a condition precedent to the right to receive the cash surrender value. Until that is done, the insured has no right thereto and the insurer no obligation in respect thereto. The insured's right is simply a right of election rather than a right, per se, to the cash surrender value. The debt or obligation of the insurer arises only when the policy is surrendered to it. Until that time, the insured himself has no right to the insurer's funds as there is no debt presently owing to the insured, and the insurer does not have any of the insured's "property" or

"rights to property" in its possession. Further, the requirement in the policy that it be surrendered is not a mere formal requirement, but affords substantial protection of insurer's interests and absolute assurance that the insuring company may be required to pay only once. On these points see the following: United States v. Metropolitan Life Ins. Co., 2 Cir., 1942, 130 F.2d 149; United States v. Penn Mutual Life Ins. Co., 3 Cir., 1942, 130 F.2d 495, 142 A.L.R. 888; United States v. Massachusetts Mut. Life Ins. Co., 1 Cir., 1942, 127 F.2d 880; Martin v. New York Life Ins. Co., 7 Cir., 1939, 104 F.2d 573, 124 A.L.R. 1163; United States v. Prudential Ins. Co. of America, D.C.E.D.Pa.1944, 54 F.Supp. 664; United States v. Aetna Life Ins. Co. of Hartford, Conn., D.C.D.Conn.1942, 46 F.Supp. 30.

The plaintiff has filed a very elaborate brief urging the application, to the facts here presented, of principles announced in certain cited decisions. Suffice it to say that, in the opinion of the Court, many of these decisions are not pertinent to this case. For example, plaintiff attempts to show a similarity between the situation here and cases wherein it was held that neither the presentation nor possession of a depositor's passbook, showing savings account deposits in a bank to his credit, is a condition precedent to the government's right to reach the deposit of the taxpayer. However, those cases are decided on the theory that a debtor-creditor relationship exists between the bank and the depositor entirely independent of the passbook. The passbook is only evidence of that debt which exists, whether or not the book is presented. In such case, the bank would have "property" or "rights to property" belonging to the taxpayer and in its possession which the government might reach under the statute. In this connection, the plaintiff cites particularly United States v. Manufacturers Trust Co., 2 Cir., 1952, 198 F.2d 366, and United States v. Emigrant Industrial Savings Bank, D.C.S.D.N.Y.1954, 122 F. Supp. 547. An examination of these last two mentioned cases reveals that the

Emigrant Savings Bank case cited and followed the Manufacturers Trust Co. case and that the decision of the Court in the Manufacturers Trust Co. case, 198 F.2d at page 368, actually destroys the plaintiff's contention of similarity as shown by the following language:

"Nor is the argument tenable that the presentation of the pass book is analogous to the condition precedent present in United States v. Metropolitan Life Ins. Co. supra, the performance of which was held necessary to the creation of any rights in property which were subject to distraint. That case involved the right of the government to reach the cash surrender value of a life insurance policy and the basis for decision was that the insurance company did not owe this amount to the insured unless, and until, the insured elected to receive it by relinquishing his other rights under the policy. It was held that the government could not make this election for the insured. But there is no like situation here. The relationship of debtor-creditor exists between the bank and its depositor regardless of the presentation of the pass book. See Myers v. Albany Savings Bank, 270 App.Div. 466, 60 N.Y.S.2d 477, affirmed 296 N.Y. 562, 68 N.E.2d 866."

Thus, it is clear that the surrender of the policy is a condition precedent to the payment of the cash surrender value thereof.

Consider now question (2). May the Court decree, *in rem*, that the policies in question be deemed surrendered and canceled? The cases hereinbefore cited hold that it cannot do so. See United States v. Metropolitan Life Ins. Co., supra; United States v. Penn Mutual Life Ins. Co., supra; United States v. Massachusetts Mutual Life Ins. Co., supra; Martin v. New York Life Ins. Co., supra; United States v. Prudential Ins. Co. of America, supra; United States v. Aetna Life Ins. Co. of Hartford, Conn., supra; United States v. Manufacturers Trust Co., supra; also 47 C.J.S., Internal Revenue, § 790.

■ These cases hold, in effect, that the right of election whether or not to receive the cash surrender value is a right which is personal to the insured alone, and neither the insurer nor the government can make that election for him. True, if the Court has personal jurisdiction over the insured, it can order him to so elect but the act of electing must be done by him alone. Where, as here, he is not subject to the jurisdiction of the Court, the election cannot be made if the insured does not so desire.

Plaintiff contends that those cases are not applicable here in that some of them were for the recovery of the statutory penalty from the insurance company for failure to pay over the cash surrender value, whereas the present case is not for the penalty. Surely, if those cases are authority for the proposition that an insurance company is not liable for the penalty for refusal to pay over the cash surrender value because it did not represent "property" or "rights to property" in its possession belonging to the insured, then they are also authority for the proposition that the government cannot reach the cash surrender value where the Court does not have personal jurisdiction over the insured. If the defendants were not required to pay it over, then they were not liable for the penalty for refusing to do so. It is the opinion of this Court that the two propositions cannot be divorced from each other. In United States v. Prudential Ins. Co. of America, supra, the Court said there is basically no difference in the two types of cases. In referring to the case of United States v. Penn Mutual Life Ins. Co., supra, the Court said that although the suit was "technically for a penalty, it was, so far as ultimate rights and liabilities are concerned, an action to recover property of the insured in possession of the insurance company".

Plaintiff further contends that others of these cases are not applicable because, in them, the insured, taxpayer, was not served with process at all and was not

before the Court in any capacity, whereas here, the Court does have jurisdiction *in rem*. However, in neither case could the Court enter a personal order or decree, and in neither case could the Court enter such an order *in rem*, the policies themselves being outside of the jurisdiction of the Court. Moreover, in United States v. Metropolitan Life Ins. Co.; United States v. Aetna Life Ins. Co. of Hartford, Conn., and Martin v. New York Life Ins. Co., supra, the insured had absented himself and his policies from the jurisdiction and was served with substituted process, just as in the present case. Clearly, the distinction for which the plaintiff contends is not well founded. Again, in the Martin v. New York Life Ins. Co. case, it was held that a trustee in bankruptcy could not reach the cash surrender value of a policy on the bankrupt's life, where he was not within the personal jurisdiction of the Court and had not surrendered the policy for cancellation, but the other two cases, namely, United States v. Metropolitan Life Ins. Co. and United States v. Aetna Life Ins. Co. of Hartford, Conn., were actions by the United States for the recovery of delinquent taxes, as in the present case.

The plaintiff argues that if the United States can not proceed against the cash surrender value of insurance policies owned by a taxpayer in circumstances such as are persent here, it would permit a taxpayer to place a large portion of his remaining assets beyond the reach of the government by simply leaving the country. However undesirable it may be, from the government's standpoint, to allow a taxpayer this avenue of escape from his obligations, the Court reaches the conclusion that, under the facts and the present law, this action must be dismissed as to the defendants, Metropolitan Life Insurance Company and Guardian Life Insurance Company of America.

Without question, the plaintiff has established its right to enforce its liens upon the real estate located in the City of Parkersburg, County of Wood, and in the Northern District of West Virginia. The Court finds that the defendant taxpayer, Milton Alfred Gilmore, is indebted to the plaintiff in the sum of $50,108.23, plus interest thereon as provided by law; that the defendants, Milton Alfred Gilmore and Sara B. Gilmore, are indebted to the plaintiff in the sum of $1,919.12, with interest thereon as provided by law; and that the defendant, Sara B. Gilmore, is indebted to the plaintiff, on the transferee assessment as decribed in the plaintiff's complaint, in the sum of $50,426.52, with interest thereon as provided by law. The plaintiff may proceed with the foreclosure of its various liens, and with the sale of the aforementioned real estate in accordance with the law and statutes in such cases made and provided.

Ordered accordingly.