## UNITED STATES v. PENN MUT. LIFE INS. CO.

### No. 7930.

Circuit Court of Appeals, Third Circuit.

Argued April 23, 1942.

Decided July 24, 1942.

Bernard· Chertcoff, Sp. Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., Sewall Key, Sp. Asst. to the Atty. Gen., Gerald A. Gleeson, U. S. Atty., and Thomas J. Curtin, Asst. U. S. Atty., on the brief), for appellant.

Robert Dechert, of Philadelphia, Pa., and Frederick H. Nash, of Boston, Mass. (Owen B. Rhoads, and Barnes, Dechert, Price & Smith, of Philadelphia, Pa., on the brief), for appellee.

Before JONES and GOODRICH, Circuit Judges, and LEAHY, District Judge.

JONES, Circuit Judge.

The question presented by this appeal is whether an insurance company, which has issued and delivered a policy of insurance on the life of a patron, is liable under Sec. 3710(b) of the Internal Revenue Code[1] for refusing to turn over the cash surrender value of the policy to the Collector of Internal Revenue upon the latter's demand under Sec. 3710(a) of the Code because of an unpaid tax liability owing by the insured to the United States, the insured never having elected to receive the cash surrender value of the policy and never having surrendered the policy to the company for cancellation.

On April 25, 1918, the Penn Mutual Life Insurance Company (the appellee) issued and delivered to James A. House in Ohio its twenty-payment policy on his life in a principal sum payable to the insured's wife as beneficiary. The policy reserved to the insured the right to change the beneficiary, a right which he exercised on September 26, 1933, by substituting his son and daughter, or the survivor of them, as the beneficiaries, who, at all times thereafter, continued to be such.

In July, 1935, the Insurance Company was notified by the Collector of Internal Revenue that a lien existed in favor of the United States against all property and rights to property belonging to the insured on account of the latter's liability for unpaid taxes due the United States. On November 18, 1935, notice of the Collector's levy and a warrant of distraint[2] were served on the Insurance Company at its home office in Philadelphia, and on December 14, 1937, final notice of the Collector's demand was likewise served on the Insurance Company. A second notice of levy

---

[1] Subsections (a) and (b) of Sec. 3710 of the Internal Revenue Code, 26 U.S. C.A.Int.Rev.Code § 3710(a, b), are as follows:

"§ 3710. Surrender of property subject to distraint

"(a) Requirement. Any person in possession of property, or rights to property, subject to distraint, * * * shall, upon demand by the collector * * *, surrender such property or rights to such collector * * *, unless such property or right is, at the time of such demand, subject to an attachment or execution under any judicial process.

"(b) Penalty for violation. Any person who fails or refuses to so surrender any of such property or rights shall be liable in his own person and estate to the United States in a sum equal to the value of the property or rights not so surrendered, but not exceeding the amount of the taxes (including penalties and interest) for the collection of which such levy has been made, together with costs and interest from the date of such levy."

[2] The Collector's authority to distrain is derived from Sec. 3690 of the Internal Revenue Code, 26 U.S.C.A.Int.Rev. Code § 3690, which provides as follows:

"§ 3690. Authority to distrain

"If any person liable to pay any taxes neglects or refuses to pay the same within ten days after notice and demand, it shall be lawful for the collector or his deputy to collect the said taxes, with such interest and other additional amounts as are required by law, by distraint and sale, in the manner provided in this subchapter, of the goods, chattels, or effects, including stocks, securities, bank accounts, and evidences of debt, of the person delinquent as aforesaid."

and warrant of distraint and, likewise, a second final notice and demand were served by the Collector on the Insurance Company in Philadelphia on February 5, 1940.

In the meantime the policy had lapsed because of the insured's failure to pay the quarterly premium due July 9, 1936. Upon the happening of that event and in accordance with the provision in the policy for automatic extended insurance, the then cash surrender value was used by the company to place the policy on an extended insurance basis in a reduced principal sum for a term expiring July 16, 1943. In due course the cash surrender value of the policy will be entirely consumed by the running of the term of the extended insurance under the nonforfeiture provision of the policy.[3] The insured never took any action to obtain the cash surrender value of the policy, nor did he ever tender the policy to the company for cancellation. The Insurance Company does not maintain separate funds as respective reserves for individual insurance contracts and the reserve upon the policy in question is a part of the general assets of the company.

The Insurance Company, denying that it had in its possession any determined property or rights to property belonging to the insured, refused to pay the Collector of Internal Revenue any sum as representing the cash surrender value of the policy. The United States thereupon brought the instant suit to recover from the Insurance Company the statutory penalty imposed by Sec. 3710(b) of the Internal Revenue Code. The District Court entered judgment in favor of the Insurance Company, from which the United States took the pending appeal.

According to the specifications of Sec. 3710(a) the establishment of three things is requisite to the enforcement of the right thereby conferred upon the Collector, viz., (1) the existence of property or rights to property in a delinquent taxpayer, (2) the possession of such property or rights to property by the person of whom demand therefor is made by the Collector, and (3) that such property or rights to property are legally subject to distraint.

■ That an insured is the owner of "property, or rights to property" by virtue of a policy of insurance upon his life will hardly be questioned. See Burnet v. Wells, 289 U.S. 670, 679, 53 S.Ct. 761, 77 L.Ed. 1439; Chase National Bank v. United States, 278 U.S. 327, 334, 49 S.Ct. 126, 73 L.Ed. 405, 63 A.L.R. 388; Cohen v. Samuels, 245 U.S. 50, 53, 38 S.Ct. 36, 62 L.Ed. 143; Burlingham v. Crouse, 228 U.S. 459, 472, 33 S.Ct. 564, 57 L.Ed. 920, 46 L.R.A., N.S., 148; Bassett v. Parsons, 140 Mass. 169, 3 N.E. 547. And it may be assumed for present purposes that such "property, or rights to property" may be the subject matter of a distraint. Cf. United States v. Massachusetts Mut. Life Ins. Co., 1 Cir., 127 F.2d 880, 883; see, also, Kyle v. McGuirk, 3 Cir., 82 F.2d 212, 213. The first and third of the requirements under Sec. 3710(a), as above specified, may, therefore, be considered to be present in this case. But it by no means follows that, because an insured has valuable rights or privileges under an extant life insurance policy, the insurer is in possession of any definite property owing to the insured.

■ While the policy endures, the insurer is powerless to compel the insured to exercise his option under the policy by accepting the cash surrender value thereof. Van Dyke Co. v. Moll, 241 Mich. 255, 217 N.W. 29, 30, 57 A.L.R. 692, 694. Concurrently, the insurer's liability remains indeterminate. It is only by the voluntary action of the insured or by the terms of the policy, if the insured fails to act, that his rights or privileges under the policy may be accrued and determined. And until that happens, there is no definite amount owing by the insurer to the insured and, hence, no ascertainable property of the insured in the possession of the insurer. Cf. National Bank of Commerce v. Appel Clothing Co., 35 Colo. 149, 83 P. 965, 966, 4 L.R.A.,N.S., 456, 117 Am.St.Rep. 186; Farmers' & Merchants' Bank v. National Life Ins. Co., 161 Ga. 793, 131 S.E. 902, 903, 44 A.L.R. 1184, 1187; Van Dyke Co. v. Moll, loc. cit. supra; Columbia Bank v. Equitable Life Assur. Soc., 79 App.Div. 601, 80 N.Y.S. 428, 433; Boisseau v. Bass' Adm'r, 100 Va. 207, 40 S.E. 647, 649, 57 L.R.A., 380, 93 Am.St.Rep. 956. In the Farmers' & Merchants' Bank case, loc. cit. supra, [161 Ga. 793, 131 S.E. 903, 44 A.L.R. 1184], the court aptly said that " * * * neither the cash surrender value nor the cash loan value of a policy of life insur-

---

[3] The cash surrender value of the policy was $793.15 in July 1935 when notice of the lien was first given but had shrunk to $386.74 on July 11, 1940, when the summons in the instant action was served.

ance * * * can be treated as a debt due the insured by the company, until steps have been taken by the insured to effect the loan or to withdraw in cash the accumulated surplus apportioned to the policy by the company." The appellant argues that the "state decisions involving attempts by ordinary creditors to reach an insured's interest in a policy are without significance" as they turn upon local statutes. None the less in ascertaining the applicability of the local statute it was necessary for the state court in each instance to determine the nature of the respective interests of the parties to a policy of life insurance and, to that extent, the state decisions are persuasive on the question as to whether any property or rights to property of the insured under an extant life policy are in the possession of the insurer. In United States v. Massachusetts Mut. Life Ins. Co., loc. cit. supra, the Court of Appeals for the First Circuit held that until the insured elected to accept the cash surrender value of his policy the insurance company was not in possession of any property or rights to property of the insured within the meaning of Sec. 3710. With that conclusion we fully agree.

Acting independently, the insurer is incapable during the term of the policy of rendering determinate the amount of its obligation to the insured thereunder. How, then, can the insurer discharge its liability under an extant policy by paying to the Collector of Internal Revenue, pursuant to Sec. 3710, a sum which is assumed to be the property of the insured who has not exercised his rights in respect of the policy? The statute attempts no provision, over and above the terms of the policy, for the determination of or the manner of discharging the insurer's contractual liability. And while it cannot possibly be of any pecuniary interest to the insurer whether it discharges its liability under the policy by paying the insured, the beneficiary, or the Collector of Internal Revenue by virtue of a distraint, the result in a case such as the present would be to require the insurance company to pay doubly when the policy binds it to pay singly. What the Collector seeks to recover from the insurer is not the latter's liability to the insured under the policy but the statutory penalty prescribed by Sec. 3710(b), for which the insurer would be liable out of its own property or estate. To be sure, the Collector would measure the penalty by what happened to be the cash surrender value of the policy at the time of the demand, but the payment by the insurance company would be none the less in discharge of a penalty assessable against it and not in payment of its liability under the policy either to the insured or to the beneficiary. And though the penalty be paid, the policy would still continue in force until the expiration of the term of the extended insurance and, upon the insured's death within that period, would become a liability on the part of the company in favor of the beneficiary for the face amount of the extended insurance. We do not believe that such a result is within the fair intendment of Congress as expressed in Sec. 3710.

The case of Columbian Nat. Life Ins. Co. v. Welch, D.C.D.Mass., 15 F.Supp. 777, 779, which the appellant cites, lends support to its present contention. But, while the decision in that case was affirmed (1 Cir., 88 F.2d 333, 334) on grounds other than the point here material, it must now be taken to have been overruled in such regard by the later decision of the Court of Appeals for the First Circuit in United States v. Massachusetts Mut. Life Ins. Co., supra, with which we are in accord. Neither are the cases, which the appellant also cites, of distraints upon bank deposits in point. In each of those instances a definite sum was presently owing the delinquent taxpayer.

We therefore hold that the property or rights to property owned by an insured in a policy of insurance are not in the possession of the insurance company so long as nothing has occurred to accrue the insurer's contractual liability. How Congress might render definite an insured's pecuniary interest under a life insurance policy so that the insurer's discharge from its contractual liability would follow from its paying the insured's accrued interest in the policy to the Collector of Internal Revenue on account of a tax delinquency of the insured is neither for us to discuss nor consider.[4] It is sufficient for present purposes that Congress did not act to that

---

[4] Also see United States v. W. A. Trout et al., D.C.S.D.Cal. 46 F.Supp. 484, decided February 19, 1942, where the government reached the insured's interest in a policy, for the enforcement of its lien, by suit in equity against the parties interested in the policy.

end in Sec. 3710 of the Internal Revenue Code. The "property, or rights to property," contemplated by Sec. 3710 are only such as where the holder's payment or transfer thereof to the Collector of Internal Revenue will operate to discharge the holder's liability to the owner.

The judgment of the District Court is affirmed.