UNITED STATES of America, Plaintiff,

v.

Anthony J. J. A. WILSON et al., Defendants.

Civ. A. No. 451–59.

United States District Court D. New Jersey.

June 23, 1961.

Asst. U. S. Atty., North Bergen, N. J., for the Government.

Nugent & Rollenhagen, by John P. Nugent, Jersey City, N. J., for defendant Massachusetts Mut. Life Ins. Co.

WORTENDYKE, District Judge.

Upon return of plaintiff's notice of motion to settle the form of an order for judgment upon this Court's opinion filed February 7, 1961, defendant Massachusetts Mutual Life Insurance Company (Mass. Mutual) sought and obtained leave to reargue the question of its liability to the plaintiff upon the judgment proposed. The matter was accordingly reargued, and briefs have been submitted and considered.

Mass. Mutual contends as follows:

1. No tax liens attached to Wilson's interest in the life insurance policies prior to the insurer's actual receipt of notice of the lien on February 2, 1950.

2. The proposed order should specify the amount of the tax liens claimed.

3. The cash surrender value of each policy is properly diminishable through operation of the automatic premium loan provisions thereof, until entry of judgment in this action.

Mass. Mutual life insurance policies here involved are No. 1,468,657 (herein referred to as '657), issued March 7, 1942, in the amount of $10,000, and No. 1,615,476 (herein referred to as '476), issued September 24, 1946, in the amount of $20,000. Anthony J. J. A. Wilson (taxpayer, sometimes also referred to as insured) is named as insured in each policy, to whom is reserved the right to successively change the beneficiary.

On November 21, 1946 the insured elected to avail himself of the "automatic premium loan" provision of each policy, which required the insurer to "automatically loan the amount required to pay" the premium then in default or its unpaid balance, and to "charge the same as indebtedness against the policy bearing interest * * * provided that the policy be sufficient security for such loan"; i. e. "if the amount of the existing in-

Chester A. Weidenburner, U. S. Atty., Newark, N. J., by Raymond W. Young.

debtedness on the policy plus the amount of the proposed loan, with interest * * does not exceed the cash value of the policy * * *. * * * Failure to repay a loan, or to pay interest thereon, shall not avoid the policy until such time as the total indebtedness thereon, including accruing interest, shall equal or exceed the then cash value of the policy * * *." Each policy also provides: "While any premium loan, made automatically or otherwise, is outstanding, dividends as they become due and payable shall be used to reduce such loan."

As pointed out in this Court's opinion of February 7, 1961 (191 F.Supp. 69), the jury found that Anthony Wilson was the owner of these policies on June 6, 1947, upon which date the plaintiff's tax lien attached to his property right in the cash surrender value of each of such policies. See infra.

I have also determined that by virtue of this Court's personal jurisdiction over the taxpayer-insured, the insurer and the beneficiary in this action, compliance with the necessary conditions precedent to the accrual of a cash surrender value under each of the Mass. Mutual policies may be compelled by this Court's judgment. United States v. Metropolitan Life Insurance Co., 4 Cir., 1958, 256 F.2d 17.

The cash surrender value of policy '657 was $1,110.84 as of June 6, 1947, but policy '476 did not acquire a cash surrender value until the end of the second policy year, September 1948, in accordance with the terms of the policy. Commencing June 7, 1953 in the case of policy '657, and December 24, 1950 in the case of policy '476, and thereafter upon each policy anniversary, premium loans were made by the insurer to the taxpayer in settlement of the insured's successive premium liabilities under each policy. Although insured gave notice to the insurer of his election to avail himself of the automatic premium loan provisions of each policy on November 21, 1946, he made subsequent payments on each until the election became effective with the payments made as noted above. By making such payments and utilizing the premium loan provisions of the policies, the cash surrender value of each policy has successively increased. However, Mass. Mutual claims it is entitled to offset the amounts of its successive premium loans, with interest thereon, against the accrued cash surrender value of each policy.

What was the taxpayer's property interest in the cash surrender value of the Mass. Mutual policies as such value accrued upon each? He had the right, but at his own election and upon compliance with the requirements of the policy provisions relating thereto, to obtain payment from the insurer of the cash surrender value of each policy. In order to obtain such cash surrender value, insured was required to (1) file with the insurer notice of election to take that value; (2) secure the written consent of the beneficiary; and (3) tender the policy to the insurer for cancellation.

Mass. Mutual argues that until a judgment is entered compelling the taxpayer to elect to avail himself of the cash surrender value of each of the policies, and to surrender each of the policies to the insurer, the beneficiary to consent thereto, and the insurer to pay over to the plaintiff the cash surrender value of each policy, no cash surrender value on either could be distrained under the statute, and no property right of the insured can be deemed to have come into existence until such a judgment is entered. The insurer further argues that no tax lien in behalf of the plaintiff could attach to the cash surrender value of either policy until a property right in the cash surrender value of the policy accrued to the taxpayer.

In United States v. Penn Mutual Life Insurance Co., 3 Cir., 1942, 130 F.2d 495, 497, 142 A.L.R. 888, the Third Circuit Court of Appeals had this to say respecting the interest of a living insured in the cash surrender value of an insurance policy upon his life:

"While the policy endures, the insurer is powerless to compel the insured to exercise his option under the policy by accepting the cash surrender value thereof * * *. Concurrently, the insurer's liability re-

mains indeterminate. It is only by the voluntary action of the insured or by the terms of the policy, if the insured fails to act, that his rights or privileges under the policy may be accrued and determined. And until that happens, there is no definite amount owing by the insurer to the insured and, hence, no ascertainable property of the insured in the possession of the insurer."

However, the Penn Mutual case, supra, and United States v. Massachusetts Mutual Life Insurance Co., 1 Cir., 1942, 127 F.2d 880, were distraint proceedings under § 3710, I.R.C.1939, 26 U.S.C. § 3710, upon levies made, pursuant to § 3690, 26 U.S.C. § 3690, upon the insured's rights to property alleged to be in the possession of the insurer. In Penn Mutual the Court further stated, 130 F.2d at page 498, that "the property or rights to property owned by an insured in a policy of insurance are not in the possession of the insurance company so long as nothing has occurred to accrue the insurer's contractual liability." In Massachusetts Mutual, the Court held, 127 F.2d at page 883, that "under the circumstances present in this case the defendant insurance company is not a person in possession of the insured's property or rights to property subject to distraint within the meaning of Section 3710." Sections 3690 and 3692, 26 U.S.C. §§ 3690, 3692 "are not *in pari materia* with sections 3670 and 3671 * * *." In re Holdsworth, D. C.N.J.1953, 113 F.Supp. 878, 880. The Third Circuit, in Penn Mutual, agreed with the holding of the First Circuit in Massachusetts Mutual that (130 F.2d at page 498) "until the insured elected to accept the cash surrender value of his policy the insurance company was not in possession of any property or rights to property of the insured within the meaning of Sec. 3710." These contentions are refuted by United States v. Bess, 1958, 357 U.S. 51, 78 S.Ct. 1054, 2 L.Ed.2d 1135. Mr. Justice Brennan says, respecting the rights of an insured in the cash surrender value of an insurance policy upon his life, 357 U.S. at page 56, 78 S. ·Ct. at page 1058: "The insured has the

right under the policy contract to compel the insurer to pay him this sum upon surrender of the policy. This right may be borrowed against, assigned or pledged. Slurszberg v. Prudential Insurance Co., * * * (15 N.J.Misc. 423, 192 A. 451). Thus Mr. Bess (the insured) 'possessed just prior to his death, a chose in action in the amount stated [i. e., the cash surrender value] which he could have collected from the insurance companies in accordance with the terms of the policies.' [United States v. Bess, 3 Cir.] 243 F.2d 675, 678. It is therefore clear that Mr. Bess had 'property' or 'rights to property,' within the meaning of § 3670, in the cash surrender value." In a footnote at page 57 of 357 U.S., at page 1058 of 78 S.Ct., Justice Brennan adds: "Once a federal tax lien attaches to the insured's interest, of course, the Government, in a proper action joining the appropriate parties, can enforce the lien in the insured's lifetime and thereby recover the cash surrender value." Citing Knox v. Great West Life Assurance Co., 6 Cir., 212 F.2d 784; Kyle v. McGuirk, 3 Cir., 82 F.2d 212; Smith v. Donnelly, D.C., 65 F.Supp. 415.

■■ Thus it appears that taxpayer had a property right in the cash surrender value to which the plaintiff's lien attached by virtue of its assessment of June 6, 1947. 26 U.S.C. §§ 3670 and 3671; Citizens State Bank of Barstow, Tex. v. Vidal, 10 Cir., 1940, 114 F.2d 380. "By Section 3670, 26 U.S.C., * * * Congress impressed a lien upon 'all property and rights to property, whether real or personal, belonging' to a tax delinquent. Stronger language could hardly have been selected to reveal a purpose to assure the collection of taxes. Not content with this language, however, Congress also provided that the lien should 'continue until the liability for such amount is satisfied or becomes unenforceable by reason of lapse of time.' 26 U.S.C. § 3671 * * *. These two sections read together indicate that a continuing lien covers property or rights to property in the delinquent's hands at any time prior to expiration. This is confirmed by Section 3678, which provides that 'whether distraint proceed-

ings have been commenced or not,' action to enforce the lien may be instituted against 'any property and rights to property, whether real or personal, or to subject any such property and rights to property *owned by the delinquent*, or in which he *has* any right, title, or interest, to the payment of such tax.' (Italics supplied (in printed text) ). For here is a plain intent to subject to the lien 'property owned by the delinquent' when suit is filed, rather than only that owned when the lien arose." Glass City Bank of Jeannette, Pa. v. United States, 1945, 326 U.S. 265, 267, 66 S.Ct. 108, 110, 90 L.Ed. 56.

■ Mass. Mutual concedes that the "cash surrender value of the policies was not diminished through advances by the Company to the insured under the automatic premium loan provisions of the policies, or otherwise, between June 6, 1947 and February 2, 1950." It argues, however, that the Government's lien did not become effective until the latter date, when a levy was served upon it (citing Rev.Rul. 56–48, 1956–1 CB 561, which requires the actual notice or knowledge of a federal tax lien upon the interest of an insured under a life insurance policy, to create liability in the insurer to the Government, for making payments to the insured or beneficiary under the policy). This Revenue Ruling is inapposite to the case at bar because the insurer admittedly had "actual" notice of the tax lien before making its first premium loan.

■ Section 3672, I.R.C.1939, 26 U.S. C. § 3672 protects "any mortgagee, pledgee, purchaser, or judgment creditor" from the effect of a tax lien arising under Sec. 3670. Clearly those premium loans made in this case may not be looked to as affording a foundation upon which the insurer may predicate its claim for the desired protection, for the essential prerequisite, lack of notice, is missing. Mass. Mutual argues, however, that when the insured elected, on November 21, 1946, as to both outstanding policies, to avail himself of the automatic premium loan option, he effectively pledged the policies even though no loans were made

thereunder at that time. We do not agree. It would be the utmost speculation to say when or how much of the cash surrender value would be loaned to the insured, or *if* in fact any premium loans would ever be extended. In such a case it cannot be said that the insurer had a choate perfected lien. See United States v. R. F. Ball Construction Co. Inc., 1958, 355 U.S. 587, 78 S.Ct. 442, 2 L.Ed.2d 510, and United States v. City of New Britain, 1954, 347 U.S. 81, 74 S.Ct. 367, 98 L.Ed. 520. Nor was Mass. Mutual, at the time it received notice of the plaintiff's lien, a mortgagee, purchaser or judgment creditor of the taxpayer.

■ As a result of the accretion to the cash surrender value of each policy by reason of payments made and premium loans credited thereto, the value of the taxpayer's contingent property right in each policy and the amount of the Government's tax lien thereon, are advancing *pari passu* with the cash surrender value of the policies. The insurer's contract right to offset the insured's indebtedness arising from the premium loans against the policy value created no more choate a lien upon the insured's increasing property right in the policy than would arise in favor of a lending bank upon the current balance of its debtor-depositor. See Agnew v. American Ice Co., 1949, 2 N.J. 291, 299, 66 A.2d 330, 10 A.L.R.2d 232; Marmon Fanning Co. v. People's National Bank of Elizabeth, E. & A. 1930, 106 N.J.Eq. 170, 150 A. 402; United States v. City of New Britain, 1954, supra.

Mass. Mutual further objects to the form of the order submitted by the Government for failure to set forth specific amounts which that insurer is directed to pay to the plaintiff. Because the total of taxpayer's tax deficiency is greatly in excess of the aggregate gross cash surrender value of the Mass. Mutual policies, the specific amount of the Government lien would be the gross cash surrender value at the time of the entry of the judgment. The successive increases in

the cash value of each of the policies were disclosed in documentary exhibits furnished by the insurer and placed in evidence by the plaintiff. In compliance with a directive of this Court, Mass. Mutual thereafter prepared and submitted a tabulation indicating the then current status of each of the policies at the last preceding anniversary date of each, as follows:

| Policy No. | Anniv. Date last past | Prem. loan Balance | Gross Cash Value | Net Cash Value |
|---|---|---|---|---|
| '657 | 6/ 7/60 | $ 1,868.43 | $ 2,940.00 | $1,071.57 |
| '476 | 9/24/60 | 13,358.66 | 14,055.40 | 994.34 |

Mass. Mutual is required to disclose, by extended calculations, the gross cash value of each of these policies as of the month in which the order herein is entered. Such order should direct Mass. Mutual to pay to the plaintiff the respective gross cash surrender values as so extended. The form of the proposed order submitted by the Government on March 21, 1961 will be approved if modified to include a recital of the gross cash values so calculated. See § 3678, I.R.C. 1939, 26 U.S.C. § 3678; United States v. Metropolitan Life Insurance Company, supra.