UNITED STATES of America, Plaintiff,

v.

Cornelius W. SULLIVAN, alias Neil Sullivan, et al., Defendants.

UNITED STATES of America, Plaintiff,

v.

William L. KANN, et al., Defendants.

Civ. A. Nos. 17402, 17747.

United States District Court
W. D. Pennsylvania.

Jan. 25, 1962.

As Amended Feb. 2, 1962.

Joseph S. Ammerman, U. S. Atty., Pittsburgh, Pa., for United States of America.

John M. Reed, Reed & Egler, Pittsburgh, Pa., for Aetna Life Ins. Co.

Ferdinand T. Weil, Weil, Vatz & Weil, Pittsburgh, Pa., for William L. Kann, Estate of Stella H. Kann, deceased, William L. Kann, Jr., Elise K. Goldman and Betty K. Wilson.

Alexander Black, Buchanan, Ingersoll, Rodewald, Kyle & Buerger, Pittsburgh, Pa., for Lincoln National Life Ins. Co.; New England Mut. Life Ins. Co.; New York Life Ins. Co.; Metropolitan Life Ins. Co.

Gilbert J. Helwig, Reed, Smith, Shaw & McClay, Pittsburgh, Pa., for Northwestern Mut. Life Ins. Co.; Prudential

Ins. Co. of America; Manufacturers Life Ins. Co.; Penn Mut. Life Ins. Co.

Thomas Lewis Jones, Pittsburgh, Pa., for Equitable Life Assurance Society of United States; General American Life Ins. Co.

R. J. Cleary, Pittsburgh, Pa., for Pittsburgh Crushed Steel Co.

John A. McCann, Pittsburgh, Pa., for Cornelius W. Sullivan and Mary E. Sullivan.

K. Martin Worthy, Hamel, Morgan, Park & Saunders, Washington, D. C., for Life Ins. Association of America, amicus curiae.

JOHN L. MILLER, District Judge.

These two actions were instituted by the Government against certain taxpayers to foreclose liens for unpaid Federal income taxes assessed against the defendant taxpayers. The Government seeks to enforce such liens by collecting the cash value of each of the life insurance policies issued by the defendant companies on the lives of the taxpayers.

These actions having been tried by the Court without a jury, the Court makes the following findings of fact and conclusions of law.

### FINDINGS OF FACT

*UNITED STATES OF AMERICA vs. WILLIAM L. KANN, et al. CIVIL ACTION NO. 17747*

1. This action was authorized and sanctioned by the Commissioner of Internal Revenue, a delegate of the Secretary of the Treasury, and was brought under the direction of the Attorney General of the United States.

2. On April 30, 1951, the Commissioner of Internal Revenue made a jeopardy assessment against defendants William L. Kann and Stella H. Kann for income taxes for the years 1936 to 1941, inclusive, in the amount of $233,196.88, with fraud penalties for said years totaling $155,999.30 and accrued interest to the date of assessment amounting to $117,048.69, the total amount assessed being $506,244.87.

3. On November 2, 1949, the said William L. Kann and Stella H. Kann filed a petition with the United States Tax Court for a review of said deficiencies. The decision of the Tax Court on said petition is reported in the case of Kann v. Commissioner, 18 T.C. 1032. The decision of the Tax Court was affirmed on appeal: 210 F.2d 247 (3rd Cir. 1953), cert. den. 347 U.S. 967, 74 S.Ct. 778, 98 L.Ed. 1109 (1954).

4. On May 5, 1951, the District Director of Internal Revenue filed notice of tax lien in the sum of $497,217.70 covering the above-mentioned jeopardy assessments of income taxes, penalties and interest for the years 1936 to 1941, inclusive, with the Prothonotary of Allegheny County, Pennsylvania, at Pittsburgh, Pennsylvania.

5. Defendant Stella H. Kann, wife of defendant William L. Kann, died on March 9, 1961, leaving a will which was duly admitted to probate by the Register of Wills of Allegheny County, Pennsylvania, and letters testamentary thereon were granted to said William L. Kann, as executor, and he now is qualified and is acting as such.

6. On July 13, 1961, William L. Kann, individually and as Executor of the Estate of Stella H. Kann, deceased; William L. Kann and Stanley Kann, Trustees; and Pittsburgh Crushed Steel Company, all defendants, and the United States, plaintiff, entered into a "Stipulation Re Settlement" in this case whereby the United States settled its claim for taxes against these particular defendants, and discharged the lien described above against all property and rights to property belonging to these defendants, except to the extent that such lien applied against the cash surrender value of life insurance policies involved in this case in an amount equal to the outstanding loans on such policies as of the date of the entry of this suit (March 24, 1959).

7. On July 13, 1961, William L. Kann, individually and as Executor of the Estate of Stella H. Kann, deceased; William L. Kann and Stanley Kann,

Trustees; and Pittsburgh Crushed Steel Company, all defendants, and the United States, plaintiff, entered into a "Stipulation of Dismissal," whereby the parties agreed that this action be dismissed with prejudice, except that the government reserved its right to proceed on its claim against the defendants "in an amount equal to the outstanding loans on said policies as of the date of entry" of this suit (March 24, 1959). By stipulation, the action against Penn Mutual Life Insurance Company and Guaranty Trust Company was dismissed with prejudice.

8. No request for the cash surrender value of the policies involved in this case has ever been received by the insurance company defendants.

9. The following policies were issued by the defendant companies insuring the lives of either William L. Kann or Stella H. Kann:

| Company/Policy Number | Date Issued | Face Amount |
|---|---|---|
| Manufacturers | | |
| 767 115 | June 5, 1939 | $50,000 |
| Prudential | | |
| 6 446 740 | Feb. 7, 1929 | 5,000 |
| 8 336 703 | Feb. 13, 1934 | 5,900 |
| 8 837 864 | Mar. 22, 1935 | 5,833 |
| 9 137 898 | Dec. 27, 1935 | 10,000 |
| New England Mutual | | |
| 710 395 | June 26, 1931 | 5,000 |
| Reliance (Lincoln) | | |
| 756 445 | Nov. 5, 1937 | 10,000 |
| Equitable | | |
| 11 580 248 | Dec. 15, 1942 | 4,000 |
| New York Life | | |
| 9 379 235 | Feb. 20, 1926 | 5,000 |
| 9 441 080 | May 5, 1926 | 5,000 |
| 9 679 251 | Dec. 10, 1926 | 1,000 |
| 10 012 405 | Oct. 14, 1927 | 4,000 |
| 10 026 237 | Oct. 27, 1927 | 5,000 |
| 10 449 976 | Nov. 28, 1928 | 5,000 |
| 10 449 977 | Nov. 28, 1928 | 25,000 |
| 10 918 332 | Jan. 4, 1930 | 5,000 |
| 11 293 172 | Nov. 19, 1930 | 10,000 |
| 11 293 173 | Nov. 19, 1930 | 5,000 |
| 11 397 741 | Mar. 19, 1931 | 5,000 |
| 11 504 923 | Feb. 1, 1931 | 5,000 |
| 11 584 707 | Oct. 3, 1931 | 10,000 |
| 11 584 708 | Oct. 3, 1931 | 5,000 |
| 11 589 278 | Oct. 8, 1931 | 10,000 |
| 11 954 488 | Dec. 27, 1932 | 10,000 |
| 11 957 423 | Dec. 29, 1932 | 5,000 |
| 12 311 796 | May 10, 1934 | 1,000 |
| 12 328 171 | June 1, 1934 | 2,000 |
| 12 323 006 | July 16, 1932 | 2,000 |
| Northwestern | | |
| 2 392 031 | Feb. 6, 1932 | 50,000 |

10. Each of the policies was delivered in Pennsylvania and was owned by either William L. Kann or Stella H. Kann.

11. Some of the policies had from time to time, both prior and subsequent to the tax assessment herein and filing of notice of tax lien, been assigned to various financial institutions, not parties to this action, as collateral security to secure loans made by said financial institutions to either William L. Kann or Stella H. Kann. All such assignments were released not later than December 1955.

12. Each of the policies was of the level premium type, wherein the amount of the premium exceeded the actuarially predicted mortality expense of the companies in the early years of the policy, being designed to create certain reserve or non-forfeiture values in each of the policies

13. Each of the policies contains a provision for the use of such reserve or non-forfeiture values by the owner prior to the death of the insured for policy loans. Such provisions are substantially similar to that contained in the policies issued by New York Life:

"LOANS.—After three full years' premiums have been paid and before default in the payment of premium, the Company, upon receipt of this Policy and a Loan Agreement satisfactory to the Company, will advance to the Insured on the sole security of this Policy any amount which, with interest, shall be within the limit of the Cash Surrender Value of this Policy. Interest on the loan will be at the rate of six per cent per annum payable annually on the anniversary of the Policy. Any existing indebtedness to the Company on this policy, including accrued interest thereon, will be deducted from the amount of said loan. If interest is not paid when due it shall be added to the principal. All or any part of the indebtedness may be repaid at any time before default in payment of any premium or within the grace period. Failure to repay such indebtedness or to pay interest will not avoid the Policy, but whenever the amount of the total indebtedness equals the Cash Surrender Value, the Policy shall become void one month after the Company shall have mailed notice to the last known address of the Insured and of the assignee of record, if any."

14. Each of the policies issued by Prudential, Manufacturers, New England and Reliance (Lincoln) contains a provision for the use of such reserve or non-forfeiture values for premium loans. Such provisions are substantially similar to that contained in the policy issued by Northwestern:

"Upon request of the Insured, and Assigns if any, made prior to default in premium payment and remaining unrevoked, any premium thereafter falling due and not paid will be charged as a premium loan with interest at the rate of six per cent. per annum, payable annually, provided the then cash surrender value is sufficient to cover such loan. If the cash surrender value is not sufficient to cover the premium then due but is sufficient to cover a semi-annual or a quarterly installment of the annual premium, then such semi-annual or quarterly premium shall be charged in like manner but in no case shall premium for less than one quarter be charged under this provision. Unpaid interest shall be added to the existing indebtedness and bear interest on the same terms. Any premium loan may be repaid at any time."

15. Pursuant to said provisions, the following automatic premium loans and policy loans were made on the dates indicated:

| Company/ Policy Number | Automatic Premium Loans | | Policy Loans | |
|---|---|---|---|---|
| | Date | Amount | Date | Amount |
| **Manufacturers** | | | | |
| 767 115 | June 5, 1956 | $2657.50 | Nov. 1, 1955 | $20,000 |
| **Prudential** | | | | |
| 6 446 740 | Mar. 10, 1960 | 96.80 | Oct. 15, 1955 | 2,000 |
| 8 336 703 | Mar. 16, 1960 | 144.24 | Oct. 15, 1955 | 2,000 |
| 8 837 864 | | | Oct. 15, 1955 | 2,000 |
| 9 137 898 | Jan. 27, 1960 | 251.10 | Oct. 15, 1955 | 4,000 |
| **New England Mutual** | | | | |
| 710 395 | June 26, 1959 | 152.64 | Oct. 17, 1955 | 2,000 |
| | June 26, 1960 | 158.50 | | |
| **Reliance (Lincoln)** | | | | |
| 756 445 | Nov. 21, 1956 | 393.50 | | |
| | Dec. 14, 1959 | 393.50 | Nov. 5, 1955 | 3,388.57 |
| | Dec. 12, 1960 | 393.50 | | |
| **Equitable** | | | | |
| 11 580 248 | | | Oct. 20, 1955 | 1,204.19 |
| **New York Life** | | | | |
| 9 379 235 | | | Dec. 16, 1955 | 2,581 |
| 9 441 080 | | | Dec. 16, 1955 | 2,551 |
| 9 679 251 | | | Dec. 16, 1955 | ——* |
| 10 012 405 | | | Dec. 16, 1955 | 1,985 |
| 10 026 237 | | | Dec. 16, 1955 | 2,481 |
| 10 449 976 | | | Dec. 16, 1955 | 2,436 |
| 10 449 977 | | | Dec. 16, 1955 | 12,183 |
| 10 918 332 | | | Oct. 19, 1955 | 2,000 |
| 11 293 172 | | | Dec. 16, 1955 | 4,750 |
| 11 293 173 | | | Dec. 16, 1955 | 2,375 |
| 11 397 741 | | | Dec. 16, 1955 | 2,403 |
| 11 504 923 | | | Oct. 19, 1955 | 2,000 |
| 11 584 707 | | | Dec. 16, 1955 | 4,657 |
| 11 584 708 | | | Dec. 16, 1955 | ——* |
| 11 589 278 | | | Dec. 16, 1955 | 4,657 |
| 11 954 488 | | | Dec. 16, 1955 | 4,610 |
| 11 957 423 | | | Dec. 16, 1955 | 4,580* |
| 12 311 796 | | | Oct. 19, 1955 | 400 |
| 12 328 171 | | | Oct. 19, 1955 | 800 |
| 12 323 006 | | | Oct. 21, 1955 | 700 |
| **Northwestern** | | | | |
| 2 392 031 | | | Oct. 17, 1955 | 23,000 |

* A check in the amount of $512 was mailed on the date indicated as a loan on policy number 9 679 251. A check in the amount of $2,328 was mailed on the date indicated as a loan on policy number 11 584 708. Neither check was cashed, and both were subsequently returned to the company uncashed. On or about April 8, 1957, the amount of loan outstanding on policy number 11 957 423 was reduced from the amount shown by transfer of $2,000 of principal and accrued interest to policy number 11 584 708 and $311 of principal and accrued interest to policy number 9 679 251.

**6**

16. Each of the policy loans was made after the filing of the notice of federal tax liens, but prior to receipt of actual notice of the existence of said liens. Certain automatic premium loans were made after receipt of actual notice of the existence of said liens.

17. Payment of each policy loan was made by check payable either to third party financial institutions or to one of the taxpayers and a financial institution jointly; each such payment was applied by the financial institutions involved to reduce loans previously made by them to the taxpayers.

18. Prior to the making of the policy loan on Manufacturers' policy 767 115, the District Director of Internal Revenue at Pittsburgh, Pennsylvania, by a letter dated October 19, 1955, requested information concerning this policy but failed to notify Manufacturers of the existence of the lien. On October 20, 1955, Manufacturers replied to this inquiry and notified the District Director that it was in the process of arranging for a policy loan of $20,000. The United States failed to notify Manufacturers of its lien thereafter.

19. Under the terms of each policy, there was no duty to repay the sums advanced or interest thereon.

20. Each of the insurance companies herein carries policy loans and automatic premium loans as assets of the company on its books.

21. Each of the insurance companies herein charges interest on all outstanding policy loans and automatic premium loans, and reflects this on its books by showing this interest as income.

22. Bills for interest on automatic premium loans are regularly sent to the insured and in the experience of the companies, some insured persons actually pay the interest due.

23. By letter dated August 2, 1955, the Commissioner of Internal Revenue issued to Metropolitan Life Insurance Company a ruling in substance the same as Revenue Ruling 56–48. This ruling was communicated to the defendant New York Life under date of August 4, 1955.

24. The following are the amounts which could have been obtained by the surrender of the policy on the dates indicated:

| Company/ Policy Number | May 5, 1951 | March 31, 1959 | May 5, 1961 |
|---|---|---|---|
| Prudential Insurance Company | | | |
| 6 446 740 | $2,120.00 | $ 776.05 | $ 626.63 |
| 8 336 703 | 2,171.20 | 1,043.48 | 962.94 |
| 8 837 864 | 1,907.40 | 858.97 | 1,157.86 |
| 9 137 898 | 3,510.00 | 800.80 | 641.33 |
| | | April 1, 1959 | |
| New York Life Insurance Company | | | |
| 9 379 235 | 2,330.00 | 491.48 | 572.61 |
| 9 441 080 | 2,225.00 | 300.19 | 539.60 |
| 9 679 251 | 466.35 | 284.27 | 333.91 |
| 10 012 405 | 1,805.56 | 232.14 | 506.13 |
| 10 026 237 | 2,249.50 | 290.44 | 632.92 |
| 10 449 976 | 2,095.00 | 323.65 | 706.42 |
| 10 449 977 | 10,475.00 | 846.57 | 2,778.48 |
| 11 293 172 | 4,284.00 | 1,152.55 | 1,685.48 |
| 11 293 173 | 2,142.00 | 576.27 | 842.74 |
| 11 397 741 | 2,200.00 | 669.36 | 842.34 |
| 11 584 707 | 4,010.00 | 1,130.19 | 1,743.08 |
| 11 584 708 | 2,005.00 | 903.32 | 1,211.59 |
| 11 589 278 | 4,010.00 | 1,130.19 | 1,743.08 |
| 11 954 488 | 3,914.00 | 1,221.06 | 1,784.49 |
| 11 957 423 | 1,958.00 | 564.05 | 1,097.85 |
| 10 918 332 | 2,032.50 | 817.64 | 1,089.60* |
| 11 504 923 | 1,834.20 | 670.00 | 924.23* |
| 12 311 796 | 335.74 | 105.17 | 164.34* |
| 12 323 006 | 693.00 | 352.50 | 511.65* |
| 12 328 171 | 672.00 | 210.13 | 328.67* |

* March 9, 1961.

| Reliance (Lincoln National Life Insurance Co.) | | | |
|---|---|---|---|
| Policy No. | May 5, 1951 | March 25, 1959 | May 5, 1961 |
| J 756 445 | $ 2,897.08 | $ 792.09 | $ 794.60 |

| New England Mutual Life Insurance Co. | | | |
|---|---|---|---|
| Policy No. | May 5, 1951 | March 30, 1959 | May 5, 1961 |
| 710 395 | $ 2,094.56 | $1,095.11 | $1,034.54 |

| Equitable Life Assurance Society | | |
|---|---|---|
| Policy No. | May 5, 1951 | May 5, 1961 |
| 11 580 248 | $ 836.08 | $ 472.49 |

| Northwestern Mutual Life Insurance Co. | | | |
|---|---|---|---|
| Policy No. | May 5, 1951 | March 31, 1959 | May 6, 1961 |
| 2 392 031 | $18,945.50 | $ 921.47 | $1,349.01 |

| Manufacturers Life Insurance Company | | | |
|---|---|---|---|
| Policy No. | May 5, 1951 | March 25, 1959 | May 5, 1961 |
| 767 115 | $15,585.00 | —0— | —0— |

*UNITED STATES OF AMERICA*
*vs. CORNELIUS W. SULLIVAN,*
*et al.*
*CIVIL ACTION NO. 17402*

25. This action was authorized and sanctioned by the Commissioner of Internal Revenue, a delegate of the Secretary of the Treasury, and was brought under the direction of the Attorney General of the United States.

26. On November 4, 1952, the Commissioner of Internal Revenue made an assessment of income taxes with penalties and interest for the year 1950, against Cornelius W. Sullivan and Mary E. Sullivan. The assessment list on which this assessment appeared was duly certified by the Commissioner to the Collector of Internal Revenue at Pittsburgh, Pennsylvania, who received said assessment list on November 5, 1952. Said Collector gave Cornelius W. Sullivan and Mary E. Sullivan notice of said assessment, demanding payment thereof on November 5, 1952. Said Collector filed notices of liens for said assessment with the Prothonotary of Somerset County, Somerset, Pennsylvania, on February 13, 1953, with the Prothonotary of Allegheny County, Pittsburgh, Pennsylvania, on November 8, 1952, and with the Clerk of Circuit Court, Dade County, Miami, Florida, on April 6, 1953. Of said assessment, the amount of $163,486.54 has not been paid, abated or credited, and is outstanding, due and owing to the plaintiff.

27. Notice of Levy for collection of the assessment, referred to in paragraph 26 hereinabove, was served on The Manufacturers Life Insurance Company and on Aetna Life Insurance Company on January 9, 1958.

28. A Final Demand was served on Manufacturers on January 23, 1958, and on January 29, 1958, said company paid the sum of $196.41 to the Internal Revenue Service on account of accrued dividends on deposit to the credit of the hereinafter designated insurance policy issued by said company.

29. The following policies were issued by the defendant companies and delivered to Elizabeth J. Sullivan (otherwise known as Mary E. Sullivan):

| Company/ Policy Number | Date Issued |
| --- | --- |
| Manufacturers 1 250 226 | June 17, 1953 |
| Aetna P 97 54 34 | May 21, 1953 |

30. Other than as shown in these policies of insurance, Elizabeth J. Sullivan (otherwise known as Mary E. Sullivan), the insured under said policies, did not file with either company a written request electing or revoking any option under either policy except that the insured surrendered each of the aforesaid policies and executed a release to said companies dated January 25, 1960 and January 15, 1960, respectively.

31. Each of the policies involved herein was delivered in the Commonwealth of Pennsylvania.

32. Each of the policies contained a provision for the use of the reserve or non-forfeiture values by the owner prior to the death of the insured for policy loans. Such provisions were substantially similar to that contained in the policy issued by New York Life as set forth in Finding 13, supra.

33. Each of the policies contained a provision for the use of such reserve or non-forfeiture values for premium loans. Such provisions are substantially similar to that contained in the policy issued by Northwestern as set forth in Finding 14, supra.

34. Pursuant to the provisions of the policy issued by Manufacturers, the following automatic premium loans and policy loans were made on the dates indicated:

| Date Premium Due | Amount of Unpaid Premium Loaned | Type of Loan | Accrued Interest | Total Loaned Including Interest |
|---|---|---|---|---|
| 6/17/55 | $270.07 | Policy Loan | –0– | $270.07 |
| 6/17/56 | –0– | -- | $12.58 | 282.65 |
| 6/17/57 | 444.45 | Policy Loan | 14.13 | 741.23 |
| 6/17/58 | 444.45 | Automatic Premium Loan | 36.63 | 1222.31 |
| 6/17/59 | 444.45 | Automatic Premium Loan | 54.57 | 1722.33 |
| Release and Surrender of Policy 1/25/60 | –0– | | 43.60 | 1765.93 |

35. The net cash value of the policy issued by Manufacturers, taking into account all prior indebtedness, on the date of the service of the Notice of Levy on the Company, of January 9, 1958, would be $133.50. The net cash value, taking into account all prior indebtedness and application of dividends, on the date of the execution of the Summons and Complaint instituting this action, of October 31, 1958, would be $37.62. The net cash value as of January 25, 1960, date of Release signed by the insured, taking into account all indebtedness and application of dividends, would be $0.00.

36. Pursuant to the provisions of the policy issued by Aetna, the following automatic premium loans were made on the dates indicated:

| Date Premium Due | Amount of Unpaid Premium Loaned | Accrued Interest | Total Loaned Including Interest |
|---|---|---|---|
| 5/21/55 | $659.90 | $ –0– | $ 659.90 |
| 5/21/56 | –0– | 30.25 | 690.15 |
| 5/21/57 | 659.90 | 34.51 | 1,384.56 |
| 5/21/58 | 659.90 | 66.48 | 2,110.94 |
| 5/21/59 | 659.90 | 102.80 | 2,873.54 |
| Release and Surrender of Policy 1/15/60 | –0– | 90.65 | 2,964.29 |

37. The net cash value of the policy issued by Aetna as of January 15, 1960, is $850.36.

38. Each of the policy loans and automatic premium loans was made after the filing of the notice of federal tax liens.

39. Each of the automatic premium loans made by Manufacturers and the last two automatic premium loans made by Aetna were made after receipt of actual notice of the existence of federal tax liens contained in the Notice of Levy served on each of the companies on January 9, 1958.

40. Under the terms of each policy, there was no duty to repay the sums advanced or interest thereon.

41. Each of the insurance companies herein carries policy loans and automatic premium loans as assets of the company on its books.

42. Each of the insurance companies herein charges interest on all outstanding policy loans and automatic premium loans, and reflects this on its books by showing this interest as income.

43. Bills for interest on automatic premium loans are regularly sent to the insured and in the experience of the companies, some insured persons actually pay the interest due.

44. By stipulation, the action against General American Life Insurance Company, Metropolitan Life Insurance Company, and The Prudential Insurance Company of America was dismissed with prejudice.

## DISCUSSION

Basically, these actions concern the manner in which cash surrender values subject to foreclosure are to be computed, where in accordance with the provisions of the insurance contracts a number of policy and automatic premium loans are made subsequent to the date of the Government's lien but prior to actual notice thereof by the defendant companies and a number of automatic premium loans made thereafter.[1] The Government contends that it is entitled to the cash surrender value as of the date of its tax lien, undiminished by those sums advanced as loans after that date, but including any increments thereto from whatever source.[2] On the other hand, the companies contend that the Government can reach only the cash value available under the contract at the time of foreclosure after taking such advances into account.

■ Quite candidly, the Government has admitted at the oral argument that the validity of its contention is dependent upon a determination by the Court that automatic premium loans and policy loans are true loans, thereby creating a debtor-creditor relationship between the policyholder and the companies. Overwhelming authority to the contrary, however, compels the Court to conclude that such loans made pursuant to the terms of the insurance contract are merely advances of amounts ultimately due under the contract; that no debtor-creditor relationship is created; and thus no question of priority of liens arises.

The nature of automatic premium and policy loans was considered by the Supreme Court as early as 1910 in Board of Assessors of Parish of Orleans v. New York Life Insurance Co., 216 U.S. 517, 30 S.Ct. 385, 54 L.Ed. 597 (1910). Speaking for the majority, Justice Holmes wrote:

" * * * A policy holder desiring to keep his policy on foot, and yet to profit by the reserve value that it has acquired, may be allowed, at the plaintiff's discretion, to receive a sum not exceeding that present value, on the terms that, on the settlement of any claim under the policy, the sum so received shall be deducted with interest (the interest representing what it is estimated that the sum would have earned if retained by the plaintiff) ; and that, on failure to pay any premium or the above-mentioned interest, the sum received shall be deducted from the reserve value at once.

"This is called a loan. It is represented by what is called a note,

---

1. Neither of these actions concerns policy loans made after actual notice of the Government's lien.

2. The Government relies principally on United States v. Wilson, 195 F.Supp. 332 (D.N.J.1961) and United States v.

Bankers' National Life Insurance Company, Civil Action No. 1214–58, 198 F.Supp. 727, D., N.J., November 3, 1961. However, for the reasons stated in this opinion, the Court declines to adopt the principles enunciated in those cases.

which contains a promise to pay the money. But as the plaintiff never advances more than it already is absolutely bound for under the policy, it has no interest in creating a personal liability, and therefore the contract on the face of the note goes on to provide that if the note is not paid when due, it shall be extinguished automatically by the counter credit for what we have called the reserve value of the policy. In short, the claim of the policy holder on the one side and of the company on the other are brought into an account current by the very act that creates the latter. The so-called liability of the policy holder never exists as a personal liability, it never is a debt, but is merely a deduction in account from the sum that the plaintiffs ultimately must pay. In settling that account, interest will be computed on the item for the reason that we have mentioned; but the item never could be sued for, any more than any other single item of a mutual account that always shows a balance against the would-be plaintiff. In form it subsists as an item until the settlement, because interest must be charged on it. *In substance it is extinct from the beginning, because, as was said by the judge below, it is a payment, not a loan.* A collateral illustration of the principle will be found in Starratt v. Mullen, 148 Mass[achusetts,] 570 [2 L.R.A. 697, 20 N.E. 178], and cases there cited.

"Instead of receiving an advance, the policy holder may draw upon the reserve value for a premium due, again giving a note; but the transaction is similar in legal characteristics to that which we have described. * * *" (Emphasis added) 216 U.S. at 521–522, 30 S.Ct. at 385–386.

This concept was reiterated by the Supreme Court in Williams v. Union Central Life Insurance Company, 291 U.S. 170, 54 S.Ct. 348, 78 L.Ed. 711 (1934), consistently followed by the lower federal courts, Gustin v. Sun Life Assur. Co. of Canada, 152 F.2d 447 (6th Cir. 1945); Schwartz v. Selden, 153 F.2d 334, 169 A.L.R. 1375 (2nd Cir. 1945); First National Bank of Wichita Falls v. State Life Insurance Co., 80 F.2d 499 (5th Cir. 1935); Lee v. Equitable Life Assurance Society of United States, 56 F.Supp. 362 (E.D.Mo.1944); In re Hirsch, 4 F.Supp. 708 (S.D.N.Y.1933), and recognized by the Commissioner in Revenue Ruling 56–48, published February 13, 1956:

"Where an insurance company does not have actual notice or knowledge of the existence of a Federal tax lien (as distinguished from constructive notice given by the filing of a notice of lien as prescribed in the Internal Revenue Code of 1954) and in the absence of negligence or fraud, the company will not incur liability to the Government in making payments to an insured or beneficiary, against whom a Federal tax lien is outstanding, to the extent of his interest in a life insurance contract. This ruling is equally applicable to so-called policy loans which are deemed in reality mere advances of sums due the insured, under decisions such as Board of Assessors of the Parish of Orleans, The City of New Orleans v. New York Life Insurance Company, 216 U.S. 517 [30 S.Ct. 585, 54 L.Ed. 597].

"Where an insurance company does have actual notice or knowledge of the existence of a Federal tax lien against a beneficiary or insured, the principles under which adverse interests in or to property or rights to property are entitled to protection may be applicable. In such cases, if the person against whom the lien is outstanding fails to take appropriate action to obtain its release, or to obtain a discharge of the property from the lien, the company may protect itself against the possibility of liability to the Government by notifying the District

Director of Internal Revenue of the facts and requesting advice as to the action to be taken to enforce the lien, meanwhile withholding payment of the sum in question."

Moreover, the Supreme Court of Pennsylvania, construing the law of Pennsylvania, has reached the identical conclusion in In re Schwartz' Estate, 369 Pa. 574, 87 A.2d 270, 31 A.L.R.2d 975 (1952):

> "Legal digests and text writers appear to be equally unanimous. 'Although a policy loan is termed a "loan," it differs from an ordinary commercial loan, and, in fact, is not a "loan" in the ordinary sense of the word. It is merely a deduction from the sum insurer ultimately must pay, and is more accurately described as an advance.': 44 C.J.S. Insurance, § 337, p. 1291. Accord: 29 Am.Jur. Insurance, § 463; Goldin on Insurance in Pennsylvania (2d ed.) page 631; 2 Couch on Insurance, § 335; Cooley's Briefs on Insurance (2d ed.) page 157."

The sole basis for the Government's contentions is the form of the transactions, i. e., loans are carried as assets on the companies' books, interest is charged and so reflected on the companies' books, a Pennsylvania statute expressly permits policy loans to be used as an investment for insurance company capital and reserves, and policy loans are listed as assets of the companies in their reports filed with the insurance authorities of the states. However, none of these factors compel a departure from this well-settled concept.

On the contrary, the testimony in this case indicates that the accounting procedures are necessary to meet the solvency requirements of state law, that reserves must be computed upon the basis of certain specific actuarial assumptions which relate to the gross amount of insurance outstanding, age of the individuals, etc., that it is accordingly more convenient to treat advances as a separate item, that there is no obligation of repayment and that the interest charged merely represents what it is estimated the sum would have earned if it had not been advanced.

The nonforfeiture and loan provisions in each of the level premium life insurance policies give to the policyholder a number of alternative rights for use of the reserve. Since it cannot be known in advance whether any of these options will ever in fact be exercised, no debtor-creditor relationship exists between the insurer and the policyholder until a specific election is made. United States v. Penn Mutual Life Insurance Co., 130 F.2d 495, 142 A.L.R. 888 (3rd Cir. 1942); United States v. Massachusetts Mutual Life Insurance Co., 127 F.2d 880 (1st Cir. 1942) and cases cited therein. See also United States v. Metropolitan Life Insurance Co., 41 F.Supp. 91 (S.D.N.Y.1941), aff'd on other grounds, 130 F.2d 149 (2nd Cir. 1942).

■ Consistent with these principles, the Courts have repeatedly held in applying the lien and levy provisions of the Internal Revenue Code to life insurance contracts, that an insurance company is not in possession of property or rights to property belonging to the insured. United States v. Penn Mutual Life Insurance Co., supra; United States v. Metropolitan Life Insurance Co., supra; United States v. Aetna Life Insurance Co., 46 F.Supp. 30 (D.Conn.1942).

> "The insured has a power, by surrendering the policy (possibly even without the consent of the beneficiary), to convert this primary obligation into an obligation to pay him the cash surrender value. * * The insured not having exercised the power to surrender the policy and thus cut out the interest of the beneficiary, the insurance company does not now owe the insured the cash surrender value. * * * A Court of equity having jurisdiction over the person of the insured might in a proper case command the insured to exercise his power and thus transmute the primary obligation of the insurance company into an obligation to pay over the cash

surrender value. * * * Accordingly we hold that under the circumstances present in this case the defendant insurance company is not a person in possession of the insured's property or rights to property subject to distraint within the meaning of Section 3710." United States v. Massachusetts Mutual Life Insurance Company, supra, 127 F.2d at 883.

It is the insured, not the insurance company, who possesses property or rights to property, i. e., the insurance contract itself, which can be levied upon and sold. United States v. Bess, 357 U.S. 51, 56, 78 S.Ct. 1054, 2 L.Ed.2d 1135 (1958). See also United States v. Penn Mutual Life Insurance Co., supra; United States v. Massachusetts Mutual Life Insurance Company, supra; United States v. Metropolitan Life Insurance Co., supra; and United States v. Aetna Life Insurance Company, supra. And, in an action in which the proper parties are joined, the Court can order exercise of any of the policyholder's rights under the insurance contract and thus transmute the primary obligation of the insurance company into an obligation to pay over whatever may at that time be available to the policyholder under the nonforfeiture provisions of the policy. This is recognized in the Penn Mutual and other cases referred to above. Therefore, it is to this bundle of inconsistent rights—to the insured's interest in the entire insurance contract—and not to any specific right that the Government's lien attaches.

■ Absent an election by the Government to exercise any of the rights of the insured, it is the duty of an insurance company to make use of the cash value in accordance with the non-forfeiture and premium loan provisions of the policy, even after actual notice of the Government's lien. See United States v. Penn Mutual Life Insurance Co., supra. Accordingly, the Court concludes that the Government is entitled to be paid only the net cash surrender value of each policy, taking into account all policy and premium loans made by the defendant companies prior to the receipt of actual notice of the Government's lien and all premium loans made thereafter.

Not only is the position of the Government legally untenable, it is one which would produce undesirable social effects of some magnitude. Evidence produced in the Kann case indicates that six of the seven defendant companies alone made 1,408,051 policy loans amounting to $455,298,956 during the year 1960. Insurance companies have no means of maintaining accurate up-to-date records of policyholders' residence addresses and obviously have no means of knowing where the policy itself is located. A requirement that lien records of more than 3000 counties be searched in every instance in which a policyholder seeks to obtain a loan or the entire cash surrender value of a policy would pose tremendous problems.

A survey made by one of the companies involved indicates that to make a search of lien records would cost approximately six dollars per search. The vast number of applications for loans and surrender values of policies are emergency in nature and as presently administered they represent a quick, certain way to secure funds urgently needed. Many companies pride themselves on twenty-four hour service; this would be extended if searches of the lien records of 3000 counties were required in every case. To conduct a search in any one county would require from three to five days. The inconvenience, delay and expense that would result to the millions of policyholders who apply for policy loans or cash values each year greatly exceed any interests the Government might possibly have in sustaining its position. For the insurance companies to hold up payment indefinitely—in the face of their clear contractual obligations under the policies—to many policyholders against whose interests in the policies the Government will never attempt to enforce its liens, would be extremely burdensome. It seems quite conceivable that the com-

panies would be subject to suit by the policyholders for ignoring their contract obligations, particularly if they neglected to keep the policies in force through automatic premium loan provisions. The Court cannot believe that, in enacting the lien provisions, Congress could ever have intended to impose such an unreasonable burden on the companies and their policyholders.

## CONCLUSIONS OF LAW

1. The Court has jurisdiction of the parties and of the subject matter of this proceeding.

2. These actions are timely brought.

3. Each policy and automatic premium loan was made in accordance with the terms of the applicable policy and, when made, was in legal effect a withdrawal from or reduction in the policy reserve.

4. The United States is entitled to be paid the net cash surrender value under each policy computed in accordance with the policy terms as of the date of surrender.

5. Upon payment of the said cash surrender values, the defendant insurance companies will be discharged of any obligation under these policies to the United States, the beneficiaries, assignees or owners of such policies.

6. In Civil Action No. 17747, the United States having relinquished all claims therein asserted, save only claims to the cash surrender value of the life insurance policies in suit to the limit of the loans outstanding on the date of commencement of the suit, judgment should be entered against the United States and in favor of each of the defendant insurance companies.

## ORDER

Now, this 25 day of January, 1962, counsel for the defendant insurance companies are directed to confer and submit within fifteen (15) days from the date hereof, and with notice to the Government, an appropriate judgment in accordance with the Court's Findings of Fact and Conclusions of Law.