**UNITED STATES of America,**
**Plaintiff,**

v.

**J. J. DAILY, d/b/a J. J. Daily Company, Fern P. Daily, Connecticut Mutual Life Insurance Company, a corporation, Defendants.**

No. 14287–3.

United States District Court
W. D. Missouri, W. D.

April 22, 1965.

F. Russell Millin, U. S. Atty., by Clifford M. Spottsville, Asst. U. S. Atty., for plaintiff.

Spencer, Fane, Britt & Browne, Kansas City, Mo., for defendant Connecticut Mut. Life Ins. Co.

No appearance for defendants Daily.

DUNCAN, District Judge.

Plaintiff instituted this suit under the provisions of §§ 7401, 7403 Internal Revenue Code of 1954, in which it was alleged that the District Director of Internal Revenue at Kansas City, Missouri, made assessments of 1961 excise and withholding taxes, interest and penalties against defendant J. J. Daily, for the year 1961 and the fourth quarter of 1962. The amount, together with interest and penalties was $4,279.05.

It was further alleged in the Complaint that the defendant, Connecticut Mutual Life Insurance Company, issued certain policies of insurance on the life of J. J. Daily, and that under the terms of the policies, Daily had the right to change the beneficiary thereof and could demand and receive the cash surrender value of the two policies.

It was further alleged that the cash surrender value of the combined policies at the time of filing of the liens, was $3,998.04, and that as of the time of the surrender of the policies on March 12, 1962, the cash surrender value and dividends payable on surrender of the policies was $2,130.86.

Plaintiff asks the court to decree that the defendant J. J. Daily has property and rights to property in each of the policies, including the right to receive the cash surrender value of each of the policies, and that the United States have a valid and subsisting prior lien in the sum of $4,279.09 together with interest according to law.

Plaintiff further requested the court to decree that the United States is entitled to enforce its lien against the defendant J. J. Daily by foreclosure upon the cash surrender value of the policies of life insurance upon his life, and "that the Court enter an order directing and requiring the defendant J. J. Daily to deposit forthwith in the custody of the Court, each and all of the policies of life insurance upon his life", and that "the Court further order and require defendant J. J. Daily to forthwith inform the Court of the present whereabouts of any and all of the said policies of life insurance that are not in his possession, custody or control".

It was also the prayer of the Complaint "that the Court enter the further order directing and requiring that the defendant Connecticut Mutual Life Insurance Company pay and remit to the United States the amount of the cash surrender value of each and all of said policies as determined by the Court".

In its Answer the defendant Connecticut Mutual Life Insurance Company admitted "that on March 12, 1962 a Notice and Levy was served upon it, in which demand was made for the sum of $4,389.-13, or for such lesser sum as defendant may be indebted to defendant J. J. Daily, and defendant admits that it failed and refused to pay over any sum, * * *."

It was further alleged in the Answer "that defendant J. J. Daily has not made demand for the cash surrender value of said policies, and therefore no sum is or has been due Daily from this defendant."

On December 9, 1963, the court entered default judgment against defendant J. J. Daily, doing business as J. J. Daily Company and Fern P. Daily, in the principal sum of $4,265.30 plus interest at the rate of 6% per annum (amounting to $553.59 as of December 9, 1963, and continuing to accrue thereafter at the rate of $0.71 per day).

Thereafter, on April 14, 1964, the court entered an order that:

"defendant J. J. Daily is hereby ordered and required to deposit within ten days of the service of this order on him to the custody of the Court, each and all policies of life insurance on his life, or that defendant J. J. Daily is ordered to forthwith inform the Court of the present whereabouts of any and all said policies that are not in his possession, custody and control, * * *."

Pursuant to that order, the defendant did surrender to the Government the insurance policies referred to in the order.

The matter is now before this court for disposition on Stipulation.[1] (Caption omitted)

[1].

"STIPULATION

It is hereby stipulated and agreed by and between the United States of America, by Clifford M. Spottsville, Assistant United States Attorney, and Connecticut Mutual Life Insurance Company by Howard F. Sachs, its attorney, as follows:

1. This action was authorized and sanctioned by the Commissioner of Internal Revenue, a delegate of the Secretary of the Treasury, and was brought under the direction of the Attorney General of the United States.

2. The District Director of Internal Revenue at Kansas City, Missouri, made assessments of 1961 excise and withholding taxes, interest and penalties against defendant J. J. Daily. Notice was given and demand was made upon J. J. Daily for payment of the amounts of each assessment. Notices of liens were filed in Jackson County, Missouri for each assess-

The question for determination by this court is whether or not the insurance company is liable under the terms of its policies for the amount of the cash surment. The date and amount of each assessment, the date of the notice and demand for each assessment, and the date of the filing of the tax liens for each assessment are as follows:

| Type of Tax | Period | Assessment Date | Notice & Demand Date | Notice of Lien Filed | Amount Outstanding |
|---|---|---|---|---|---|
| Excise | 2d Qtr 1961 | 8/18/61 | 9/21/61 | 11/17/61 | $ 521.88 |
| Withholding | 2d Qtr 1961 | 8/18/61 | 9/21/61 | 11/17/61 | 1,445.28 |
| Withholding | 3d Qtr 1961 | 11/9/61 | 11/9/61 | 12/28/61 | 1,345.65 |
| | | | | (P) | 22.42 |
| | | | | (I) | 1.98 |
| Withholding | 4th Qtr 1961 | 2/9/62 | 2/9/62 | 3/7/62 | 649.06 |
| | | | | (I) | 10.82 |
| | | | | Total | $3,998.04 |

P = Penalty
I = Interest

3. On March 12, 1962, at Kansas City, Missouri, the District Director of Internal Revenue served notice of levy on the defendant, Connecticut Mutual Life Insurance Company, for the cash surrender values of insurance policies held by it and belonging to J. J. Daily.

4. On March 12, 1962, the defendant, Connecticut Mutual Life Insurance Company was an insurer of the life of J. J. Daily. Under the terms of the insurance policies, J. J. Daily had a right to change the beneficiary thereof and could demand and receive the cash surrender value of said policy.

5. The face amount of the policies and cash surrender thereof as of the date levy was served upon defendant, Connecticut Mutual Life Insurance Company, are as follows:

| Policy No. | Face Amount of Policy | March 12, 1962 Cash Surrender Value and Dividends Payable on Surrender |
|---|---|---|
| 1,463,304 | $ 5,000.00 | $ 553.70 |
| 1,463,305 | 5,000.00 | 384.00 |
| 1,607,262 | 10,000.00 | 744.92 |
| 1,928,989 | 10,000.00 | 224.12 |
| 1,928,990 | 10,000.00 | 224.12 |
| | Total | $2,130.86 |

6. At the date of the levy the Internal Revenue Service did not have in its possession and did not surrender to the defendant, Connecticut Mutual Life Insurance Company, the written policies involved.

7. On the 24th day of April, 1964, pursuant to an order made by the Honorable Richard N. Duncan, United States District Judge on April 14, 1964, there were delivered to Mr. Clifford M. Spottsville, Assistant United States Attorney herein, the Connecticut Mutual Life Insurance policies on the life of J. J. Daily, Nos. 1,463,304; 1,463,305; 1,607,262; 1,928,989; and 1,928,990.

8. On May 8, 1964, the aforesaid life insurance policies were surrendered to defendant, Connecticut Mutual Life Insurance Company. As of the date of May 8, 1964, the net cash surrender value of these policies were as follows:

| Policy No. | Net Cash Surrender Value and Dividends payable on Surrender |
|---|---|
| 1,463,304 | $ 641.46 |
| 1,463,305 | 326.08 |
| 1,607,262 | 714.49 |
| 1,928,989 | –0– |
| 1,928,990 | –0– |
| Total | $1,682.03 |

9. Each of the policies was of the low premium type wherein the amount of the premium exceeded the actuarially predicted mortality expense of the company in the early years of

render value as of the date of the filing of the levy, or as of the time when the policies were delivered for cancellation.

Each of the policies "was of the low premium type wherein the amount of the premium exceeded the actuarially predicted mortality expense of the company in the early years of the policy, being designed to create certain reserve or non-forfeiture values in each of the policies." Each of the policies contained a provision for the use of such reserve or non-forfeiture values for premium loans. The provision of each policy was:

"If written application be filed at the Home Office of the Company upon its form therefor while this Policy is a premium-paying policy, and if such application remains unrevoked, the amount of any premium falling due after the first policy year following the Date of Expiration of Initial Term Insurance and not otherwise paid as herein provided will be charged as an indebtedness against and secured by this Policy, provided the entire indebtedness hereon including such charge shall not exceed the limit secured by the Cash Value hereof; such indebtedness to bear interest from the due date of such premium, and to be subject to the terms herein provided for policy loans, but without assignment or delivery of this Policy, and any premium so charged will be treated as paid."

It is stipulated that "At all relevant times, insured maintained on file with defendant company applications for premium loans, mentioned in the foregoing paragraph."

Between the time of the filing of the levy on November 17, 1961 and December 28, 1961 and March 7, 1962 and March 12, 1962, when the policies were surrendered to the company, the company, in accordance with the provisions of its policies, had charged as indebtedness against the cash surrender value of the policies, the difference between the value at the time of the levy and the time of the surrender of the policies. This difference was $1,867.18.

It is the Government's contention that after the levy was filed, the company had no right to convert any part of the cash surrender value to the continuation of the life of the policies. This question has been before the courts in numerous cases, and in each instance the ruling of

the policy, being designed to create certain reserve or non-forfeiture values in each of the policies.

10. Each of the policies issued by defendant, Connecticut Mutual Life Insurance Company, contains a provision for the use of such reserve or non-forfeiture values for premium loans. Such provision is as follows:

If written application be filed at the Home Office of the Company upon its form therefor while this Policy is a premium-paying policy, and if such application remains unrevoked, the amount of any premium falling due after the first policy year following the Date of Expiration of Initial Term Insurance and not otherwise paid as herein provided will be charged as an indebtedness against and secured by this Policy, provided the entire indebtedness hereon including such charge shall not exceed the limit secured by the Cash Value hereof; such indebtedness to bear interest from the due date of such premium, and to be subject to the terms herein provided for policy loans, but without assignment or delivery of this Policy, and any premium so charged will be treated as paid.

11. At all relevant times, insured maintained on file with defendant company applications for premium loans, mentioned in the foregoing paragraph.

12. The reduction in cash surrender value between the date of the levy by the Internal Revenue Service upon defendant, Connecticut Mutual Life Insruance Company, and the date of the surrender of said policies to Connecticut Mutual Life Insurance Company was due to the automatic premium loans made pursuant to the above-mentioned provision.

It Is Stipulated and Agreed that all the facts set out and described herein above are admitted into evidence without further testimony therein.

Dated on the 22nd day of December, 1964, at Kansas City, Missouri."

(Signatures omitted)

the court has been adverse to the present contention of the Government.

In United States v. Sullivan, 333 F.2d 100, decided April 10, 1964, the Third Circuit had the identical question before it, and in a very exhaustive opinion by Chief Judge Biggs, every conceivable question that could be raised in the case, was raised, discussed and determined. The concluding paragraph of Judge Biggs' opinion states:

> "The Government was entitled to the cash surrender values of the Aetna and Manufacturers policies determined as of the dates of their surrender and release, and interest thereon from those times. The Government did not have the right to recover from the insurers the amounts of the policy loans and automatic premium loans with interest which were effected after recordation of lien and service of notice of levy respectively."

Judge Hastie of that court, in a dissenting opinion, disagreed with the majority opinion and contended that the filing of the lien terminated all further rights of the insurer to apply any part of the cash surrender value to the payment of premiums under the provisions of the policy, and cited United States v. Bess, 357 U.S. 51, 78 S.Ct. 1054, 2 L.Ed.2d 1135. The majority opinion also discussed at considerable length the Bess case and came to the conclusion that the facts in that case were not controlling. I agree with the majority opinion in that respect.

The identical question was also before the District Court in United States v. Salerno, 222 F.Supp. 664. Judge Thompson, District Judge, stated at l. c. 671:

> "We agree generally with the conclusions of the Courts in United States v. Mitchell, D.C., 210 F.Supp. 810, and United States v. Sullivan, D.C., 203 F.Supp. 1, and particularly the holdings that the insurance company has the right and power to perform the obligations of the insurance contracts after actual notice

of the federal tax lien and even after levy and demand under 26 U.S.C. §§ 6331 and 6332, thus reducing or impairing the property right against which the lien attached, and leaving only the cash value at the time of foreclosure existent as security for the tax liability."

While the opinion in the Sullivan case, and the other cases outside our circuit, are not binding upon this court, they are at least most persuasive. In view of the careful consideration of the identical factual situation in the Sullivan case, we feel constrained to follow it.

Plaintiff's Motion for Summary Judgment is therefore overruled, and the "Motion of defendant Connecticut Mutual Life Insurance Company for entry of judgment settling its liability to plaintiff" is sustained, and judgment is rendered against it in the sum of $1,682.03, with interest from May 8, 1964, when the cause arose. It is so ordered.